THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CON-
NECTING RAILWAY COMPANY, PLAINTIFF IN ERROR,
v. THE STATE, THE UNITED NEW JERSEY RAILROAD
AND CANAL COMPANY AND THE PENNSYLVANIA
RAILROAD COMPANY, PROSECUTORS, DEFENDANTS IN
ERROR.

1. One railroad company may condemn the right to cross the lands of another company of the same character, although those lands be necessary for the railroad purposes of the latter company.

2. In such a condemnation, all that is acquired is the privilege or easement of crossing. The place of crossing is to be and remain in the common use of both companies, for the exercise of their respective franchises.

3. The condemning company may, by its petition in condemnation proceedings, designate a lawful manner in which it will cross the lands of the other company, and make compensation for that single manner of crossing, in which case it can thereafter cross only in accordance with the plan thus designated.

4. When such petition prescribes the manner of crossing, the legality of the plan and manner of crossing proposed may be reviewed, in the Supreme Court, upon *certiorari.*

5. Upon due compensation, the present use of the lands for the railroad crossed must yield to any necessary interference by the crossing road which will not destroy the reasonably fair enjoyment and exercise of the franchises of the company whose lands are crossed.

6. Where the condemning company fails to define in its petition how it will cross, and seeks to condemn the privilege of crossing generally, the damages are to be assessed, not only for any manner of crossing at present lawful and necessary, but also for lawful changes in the manner of crossing in the future.

7. In such case, like the case where the manner of crossing is designated, a mere privilege or easement of crossing is acquired, the land being subject to a like privilege or easement in favor of the road crossed.

8. If in the use of such easement, whether it be acquired under proceedings to condemn a crossing in a specified manner or under proceedings to condemn a crossing generally, conflict should at any time arise between the companies entitled, the interposition of equity may be invoked to secure to each company the enjoyment of its privilege in a just and lawful manner.

9. In condemnation proceedings by a railroad company, the lands sought to be condemned must be within the located route of the condemning company, and must be described with certainty, so that they shall be

capable of definite and unmistakable ascertainment.  Uncertainty in
this respect will vitiate the proceedings.

10. Under the act to authorize the formation of railroad corporations and;
regulate the same, approved April 2d, 1873 (*Rev., p.* 925), and its sup-
plements, a railroad less than a mile in length may be built, and an
independent company may be organized to build a railroad which will.
connect two existing railroads.

On error to the Supreme Court.    For opinion of the Su-
preme Court, see 23 *Vroom* 90.

For the plaintiff in error, *Gilbert Collins* and *John R. Emery*.

For the defendants in error, *James B. Vredenburgh* and
*Joseph D. Bedle.*

PER CURIAM.

The judges voting to reverse the judgment of the Supreme
Court in the above entitled cause concur in the opinion de-
livered by the Chancellor, except so far as it holds the petition
to be defective.    Deeming the petition sufficient, we think the
judgment below should be reversed.

THE CHANCELLOR.    The plaintiff in error was organized'
in pursuance of the provisions of the act to "authorize the
formation of railroad corporations and regulate the same,'"
approved April 2d, 1873 (*Rev., p.* 925), and its supplements,.
known as the General Railroad law, for the purpose of build-
ing a railroad, about twenty-six hundred feet long, within the
corporate limits of Jersey City.    On the 10th of December,.
1888, it filed a survey of the route and location of its pro-
posed road.    That survey provides that it is to commence at a
point in the route of the National Docks railroad south of
Montgomery street, and run northerly several courses, about
fifteen hundred feet, to the lands of the defendants, and then,
for more than one thousand feet, through the defendants'
lands to a point in the route of the New Jersey Junction
Railroad Company, thus forming a direct connection between

the routes of the National Docks and New Jersey Junction railroads. The land of the defendants first traversed by this route is an embankment, immediately adjoining, running parallel with, and elevated about twenty-three feet above, Railroad avenue, one of the public streets of Jersey City. Upon this embankment, for many years, the main line of the defendants' railroad was constructed and operated, but that line now being shifted to the north, the embankment is occupied by a side track. Immediately north of this embankment, for two or three hundred feet, is ground, raised to the grade of the old embankment by filling up a hollow, which the defendants propose to use, in connection with their old main line embankment, as a car yard, made necessary by the elevation of their tracks through Jersey City. North of this land is an embankment, upon which the defendants' new main line is constructed, and then some partially filled, but unused, meadow. The terminus of the route is at or near the point where the New Jersey Junction railroad crosses the defendants' right of way, from their main line to their freight depots in Harsimus cove, over which, upon an elevated iron trestle or bridge, its freight tracks are laid.

When the New Jersey Junction railroad, as it is at present constructed, emerges from under the defendants' freight line, it curves to the east and ascends to the defendants' main line, making a connection with it, although its filed route shows that it was contemplated that the main line should not curve to the east but continue in a southerly direction.

This curved extension to the connection with the defendants' road is in the location of Branch No. 7, represented upon the filed route of the New Jersey Junction railroad, and although, as constructed, it appears to be a continuation of the main line, it is called "Branch Railroad No. 7." At a point nearly opposite the commencement of this curve, or the place of departure of Branch No. 7 from the main line of the Junction railroad, the defendants have cut through the embankment upon which their new main line is constructed, walled the cut, and carried their main line over it upon a bridge. Through

this cut, under the bridge, they have laid two tracks. It is in evidence that their purpose in making this cut was to provide an undergrade connection, through their land, with the National Docks railroad, but that such intention has been abandoned. The plaintiff now proposes to utilize this cut for its road, and to continue it, with suitable walls, southerly, through the defendants' proposed car yard to Railroad avenue. As the plaintiff's road must cross that avenue above or below the street's grade (*Rev.*, *p.* 930, § 14), and it appears to be impracticable for it to cross below the grade, it will be necessary for it, after it passes the defendants' main line, to gradually raise the bottom of its cut through the defendants' land, so that, at Railroad avenue, it may be the requisite distance above the surface of that street. In that event, to enable the defendants to use their land between their main line and Railroad avenue for a car yard, on both sides of this cut, the grade must be gradually raised from the new main line southerly. The maximum of the change thus required will be at the embankment upon which the old main line was constructed, eight feet and a half above the present grade at that point and three feet and ten inches above the grade of the defendants' new main line.

By its petition for the appointment of commissioners to assess the compensation and damages to be paid to the defendants for the proposed crossing, the plaintiff has specified the manner in which it intends to cross that part of the defendants' lands which appears to be necessary for railroad purposes. The cut, together with that now existing under the defendants' main line, is to be five hundred and twenty-four feet long, walled on both sides with walls constructed of stone resting on solid foundation, twelve feet in width at the bottom and five feet in width at the top, with a batter on the inner face of half an inch to a foot. The inner faces of the wall are to be thirty feet apart at the level of the rails in the proposed road. These walls are to unite with and continue the walls which support the defendants' main line over the cut now existing under that line, and to gradually rise, upon

a grade of eighty-two hundredths of a foot to each one hundred feet, until, at Railroad avenue, they shall be thirty-one feet above the crown of the road bed of that highway. The walls are to be competent to support half through girder railroad · bridges at every point; and the defendants are to have the right to use the walls to support such bridges and for all other purposes which will not interfere with the proper use of the plaintiff's proposed railroad.

At this point in the statement of facts two inquiries are presented : *First,* whether, in acquiring the crossing over an existing railroad a condemning company may, by its petition, designate the manner of crossing and make compensation for such crossing only, or whether it must condemn the right to cross generally, subject to such restrictions and requirements in the use of the right it may acquire as the Court of Chancery may reasonably prescribe, making compensation predicated upon anticipated and possible regulation, and *second,* whether a crossing which interferes with the present use or intended use of railroad lands for railroad purposes, is lawful.

The right of one railroad to cross another which is intersected by its route, is so plainly essential to its construction for any considerable distance that it has become indisputably established by implication from mere authority to build a railroad between given points. *Morris and Essex R. R. Co.* v. *Central R. R. Co.,* 2 *Vroom* 205; *National Railway Co.* v. *Easton and Amboy R. R. Co.,* 7 *Id.* 182; *New Jersey Southern R. R. Co.* v. *Long Branch Commissioners,* 10 *Id.* 28; *New York and Long Branch R. R. Co.* v. *Drummond,* 17 *Id.* 644; and the General Railroad law recognizes this right in railroads incorporated under it in terms so unambiguous as to be tantamount to express authority. *Rev., p.* 934, § 36; *State, Morris and Essex R. R. Co.,* v. *Hudson Tunnel Co.,* 9 *Vroom* 548. The right, however, is by implication from necessity, and its exercise must therefore be limited by the necessity of the condemning road.

In the condemnation of a crossing over the lands of another railroad which are necessary for railroad purposes, all that is

acquired is a right of way.   After such condemnation, the place of crossing remains in the common use of both railroads for the exercise of their respective franchises.   The manner of crossing is not to be destructive of the ability of the road crossed to fully, fairly and freely exercise its franchises.   *State* v. *National R. R. Co.*, 7 *Vroom* 181 ; *New Jersey Southern R. R. Co.* v. *Long Branch Commissioners*, 10 *Id.* 28 ; *Lehigh Valley R. R. Co.* v. *Dover and Rockaway R. R. Co.*, 14 *Id.* 528 ; *New York and Long Branch R. R. Co.* v. *Drummond*, 17 *Id.* 644.

It is not perceived that there can be tenable or sufficient objection to the designation of the manner of crossing in the petition in condemnation proceedings.

It is within the power of one railroad to determine by the location of its route where it will cross another.   *National Docks R. R. Co.* v. *Central R. R. Co.*, 5 *Stew. Eq.* 755.   And it is impossible to perceive a sufficient reason why it may not also determine, within lawful bounds, how it shall cross the other.   When a crossing is sought in a manner specified in its petition, the condemning company will make compensation for a crossing in that single manner, which, if it may thereafter be materially changed, may not be so changed without additional compensation for the damage which the change may occasion.   The specification, upon the record, of the exact method of using the right of way to be acquired, limits the compensation to the damages which may result from such use, and there can be no presumption, as in case of a general condemnation (*Lew. Em. Dom.*, § 565, and *Van Schoick* v. *Delaware and Raritan Canal Co.*, *Spenc.* 249; *Ten Eyck* v. *Delaware and Raritan Canal Co.*, 3 *Harr.* 200; *Delaware and Raritan Canal Co.* v. *Lee*, 2 *Zab.* 243; *The Trenton Water Power Co.* v. *Chambers*, 2 *Beas.* 199), that all damages, both present and prospective, including those occasioned by subsequent changes in the plan of crossing, have been considered and allowed.

When the petition prescribes the manner of crossing, the effect upon the road crossed being thereby discernible, it is

apparent that the legality of the proposed plan may be conveniently and properly questioned before the condemnation proceeds, not by the judge to whom the petition is presented, whose jurisdiction is limited by statute, but by the Supreme Court, under its general supervisory powers, upon *certiorari. State* v. *Hudson Tunnel Co.*, 9 *Vroom* 548.

At this point the second question suggested, whether a crossing which interferes with the present use or intended use of railroad lands for railroad purposes is lawful, arises.

As has been stated, in the acquisition of a right to cross, the ability of the existing company to fully, fairly and freely exercise its franchises is not to be destroyed. It is not the policy of the law to cripple or destroy one highway for the purpose of erecting another. The purpose is to preserve, multiply and maintain highways for the development of the country and the general public benefit. And this purpose is especially manifested in the General Railroad law, where there exists a prohibition against the condemnation of lands used for railroad purposes, except for a mere crossing. But it does not follow that the precise existing use of the land crossed may not be interfered with. There can be no reason why such use should not yield, if the proposed interference with it is necessary, and of a character that will not destroy the reasonably fair enjoyment and exercise of the franchises of the company whose road is crossed. Ability to enjoy all its privileges and to perform all its duties in a proper and reasonable manner being secured to the latter company, it must, upon being duly compensated, submit to the necessary inconvenience and damage which the crossing may occasion. This view of the law has already found expression in this court, both in the *New York and Long Branch R. R. Co.* v. *Drummond*, 17 *Vroom* 644, and *The State* v. *Hudson Tunnel Co.*, 9 *Id.* 548.

In recognizing the right of the condemning company to specify a lawful manner of crossing, and to condemn a crossing in that manner, the right to condemn without such specification must not be lost sight of. Where such a company fails

in its petition to define how it will cross, but seeks to condemn the privilege of crossing generally, the damages are to be assessed, as in the case of the condemnation of lands of private individuals for railroad uses, not only for any manner of crossing at present lawful and necessary, but for lawful changes in that manner of crossing in the future.

That which is acquired in such a condemnation, as in the case where the manner of crossing is specified in the petition, is a mere privilege or easement in lands, which are subject to a like privilege in favor of the road which is crossed. If, in the use of this common easement, whether it be acquired under proceedings to condemn a crossing in a specified manner or under proceedings to condemn a crossing generally, conflict should at any time arise between the companies, the interposition of equity may be invoked, according to the principles declared in *Delaware, Lackawanna and Western R. R. Co.* v. *Erie Railway Co.*, 6 *C. E. Gr.* 298, and approved in this court in the *National Docks R. R. Co.* v. *The Central R. R. Co. of New Jersey*, 5 *Stew. Eq.* 767, to secure to each the enjoyment of its privilege in a lawful manner.

The proofs in the present case disclose that the projected crossing now considered cannot be effected without considerable inconvenience and damage to the defendants. It will necessitate a change in the proposed car yard, which will not only be in itself expensive, but will also render the future operation of the yard more difficult and costly to its managers and dangerous to their employes; by reason of heavy grade and of a cut through its centre, unless an expensive change in the proposed grade of the defendants' elevated tracks, now in course of construction through Jersey City, is made, and some safe covering for the plaintiff's cut is devised. The necessities of the defendants appear to forbid the abandonment of their yard, or its transfer to another locality. But, however serious this inconvenience and damage may be, it does not appear that they will be either destructive to the ability of the defendants to fully and fairly exercise their franchises and perform their duties, or of such character that they may not be adequately

compensated in damages. In addition, it appears to be reasonably necessary that the plaintiff's projected crossing shall be effected in the manner and at the place proposed. East of that place is a closely built city, which can be passed through only at an enormous cost, and on the west is a net work of the defendants' tracks and a rocky hill, which present almost insuperable obstacles in that direction. It is not suggested or perceived how a route more desirable or convenient to either the plaintiff or defendants, between the termini of the plaintiff's road, could be selected. The projected crossing, then, is not unlawful.

In addition to the crossing over the lands of the defendants, which appear to be necessary for their railroad purposes, the plaintiff proposes to acquire a portion of the unused meadow north of the defendants' new main line embankment, "twenty-seven and a half feet wide on each side of its centre line, except at or near the extreme northerly end thereof, where it requires thirty-seven and a half feet in width on the easterly side of said centre line." The plaintiff's petition contains a particular description of the land thus sought to be condemned, in which the northerly end of that land is described as follows: "Thence curving to the left on a radius of five hundred and forty-six and two tenths ($546\frac{2}{10}$) feet a distance of one hundred and sixteen (116) feet to a point opposite the southerly end of the westerly wall or abutment supporting the tracks of the Pennsylvania Railroad Company, known as the Harsimus cove or freight tracks; thence (S. 63° 50' E.) south, sixty-three degrees and fifty minutes east, a distance of twenty-two and a half ($22\frac{1}{2}$) feet to the corner of said last mentioned wall or abutment; thence (N. 26° 10' E.) north, twenty-six degrees and ten minutes east, along the face of said wall or abutment, a distance of eighteen and seventy-eight one hundredths ($18\frac{78}{100}$) feet to a point five (5) feet westerly from station ($25+94\frac{8}{10}$) twenty-five plus ninety-four and eight tenths feet, being the point of ending of said centre line; thence in a course about (S. 63° 50' E.) south, sixty-three degrees and fifty minutes east, a distance of forty-two and five

tenths ($42\frac{5}{10}$) feet, running through the end of said centre line, as filed, to a point thirty-seven and a half feet easterly thereof; thence (S. 26° 10′ W.) south, twenty-six degrees and ten minutes west, a distance of twenty-seven (27) feet to a point in the division line between the lands of said Pennsylvania Railroad Company and the New Jersey Junction Railroad Company."

It is objected that the land thus described is not within the plaintiff's located route, and that therefore it cannot be taken by condemnation. This view was adopted by the Supreme Court. The objection grows out of the uncertainty as to the location of the northerly terminus of the filed route. It is stated in the survey of that route to be a point on the line of the New Jersey Junction railroad as constructed, which is " the point of departure of Branch Railroad No. 7 of the last mentioned railroad company, as filed March 2d, 1886, in the secretary of state's office." Now, that which is filed in the secretary of state's office exhibits centre lines only, and the point of departure of Branch No. 7, as there shown, is the point at which the centre line of the branch leaves the centre of the main line. If the point thus indicated be the terminus intended, it is clear that the condemnation contemplates the taking of land outside of the filed route of considerable and valuable proportions. The courses given in the survey of the route, however, do not lead to this point, and if those courses be run the distances given in the survey, without qualification, the terminus would be several feet northwest of the departure of the centre line of the branch from the centre of the main line of the Junction railroad, upon a curving rail on the westerly side of the westerly track of that road; a point which is not indicated upon any survey of the New Jersey Junction railroad which is filed in the office of the secretary of state. But the distances in the survey are qualified. It is expressly stated that they are to be taken " more or less." And thus the survey provides that the terminus is to control the distances. The terminus is not a visible monument, but it is capable of ascertainment, and by the express provisions of

the survey it is given the character of a visible monument. The engineer of the plaintiff in error explains that the words "more or less" were designed to make the distances, which were expressed in figures, sufficiently elastic to reach the exact point on the curved westerly rail of the New Jersey Junction railroad, as that railroad is now constructed, where it may be determined that the Branch No. 7 departs upon that rail from the main line, the exact point being uncertain. The courses of the survey lend credence to this explanation, but the description of the terminal point is at decided variance with it. It is impossible to reconcile all parts of the description. It is suggested that the court should consider the description of the terminal point elliptical, and supply words to make it conform to the theory of its meaning advanced by the plaintiff. We perceive no warrant for so doing, in view of the fact that the terminal point intended is not identified. It is deemed that the great value of the property, and the conflict of important railroad interests at this point, render it necessary that the disputed terminus should be so described that it will be capable of definite and unmistakable ascertainment. As it is now designated it is so indefinite and uncertain that it is impossible to say that the land sought to be condemned is all within the plaintiff's located route. We think that this uncertainty vitiates the proceedings reviewed.

The defendants present two other objections to the proceedings considered which demand attention, because they question the plaintiff's legal existence. The first is, that the General Railroad law does not authorize the construction of a railroad less than a mile in length, and the second is, that a connection between two railroads, incorporated under that law, cannot be accomplished by an independent corporation. It is argued, in support of the first of these propositions, that the rating of the deposit to be made with the state treasurer at the time of incorporation, and the charges that the company may make for transportation, and the minimum of the company's capital stock, by the mile, conclusively exhibits the legislative intent that the railroads contemplated by the law shall be more than

a mile in length. The statute expressly provides for two classes of railroads—those more than ten miles long and those less than ten miles in length—but it makes no minimum limit of length in the latter class. The design of the law is to subserve the public good. Consequently, every railroad incorporated under it is expressly required to transport such passengers and property as shall be properly offered for transportation at its depots. *Rev., p.* 932, § 26. The test of the road intended is its public use and benefit, and not its extent or length. *Long Branch Commissioners* v. *West End R. R. Co.,* 2 *Stew. Eq.* 566 ; *National Docks R. R. Co.* v. *Central R. R. Co.,* 5 *Id.* 755, 766. The law makers apparently considered the utility of a legislative limitation of the length of a railroad to be so questionable, in view of the fact that capital will not seek unremunerative investment and duties, that they did not impose it. This interpretation of the statute is now too well established in our courts to be disturbed. The public convenience and benefit being subserved, which is exhibited by the investment of capital, the railroad may be less than a mile in length.

The second objection, that a connection between two railroads cannot be accomplished by an independent corporation, is claimed to be supported by the provisions of the twenty-third section of the General Railroad law, which, it is said, contemplates an extension of or an addition to an existing road, to form a desired connection, and by the supplement of 1880 (*Pamph. L., p.* 94) to the "Act concerning railroads." *Rev. Sup., p.* 823, § 7. The latter act appears to be directed to specially chartered railroads. But, at best, both the laws referred to merely confer power to make railroad connections. I fail to find anything in the statute which prohibits the connection of two railroads by an independently incorporated company. In Long Branch Commissioners *v.* West End R. R. Co., above cited, it was said that the twenty-third section of the General Railroad law expressly declares that a corporation whose road shall be constructed under this law shall have the right to connect its road with any railroads within

this state or any other state, and that the sole purpose of the acquisition of corporate functions by the defendants in that case was to build a connecting road between two existing roads, and that such purpose is specially legalized.

We do not think that this objection is well taken.

Other objections go merely to the regularity of the plaintiff's proceedings, and as we think that those proceedings are vitiated by the uncertainty whether the land which the plaintiff seeks to condemn is within its located route, it is not necessary to consider them. · Our conclusions upon the points stated lead to an affirmance of the judgment of the Supreme Court.

*For affirmance*—THE CHANCELLOR; CHIEF JUSTICE, DIXON, VAN SYCKEL. 4.

*For reversal*—BROWN, CLEMENT, COLE, SMITH, WHITAKER. 5.