THE JERSEY CITY, NEWARK AND WESTERN RAILWAY
COMPANY

*v.*

· THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. Where a railroad corporation, formed under the General Railroad law, locates its route so that its line crosses the route of another railroad, the law gives it the right to decide for itself whether it will cross such other road at grade or otherwise. Its right to cross at grade is subject to but two limitations—*first*, it shall not cross at a less angle than twenty degrees; and, *second*, it shall not cross in such manner as will destroy the reasonably fair enjoyment of the franchises of the road whose route is crossed.

2. The verdict of the jury that tries an appeal from the award of commissioners, fixes finally and conclusively the sum which, in that particular case, must be regarded as just compensation, so far as may be necessary to confer upon the condemning company the right, on the payment of the money, to appropriate the property condemned.

3. An appeal by a land-owner, from the award of commissioners, operates as a *supersedeas*, and deprives the condemning company of the right to appropriate the land until the appeal has been determined and the sum awarded by the jury is either paid or tendered.

On an application for an injunction, heard on bill and affidavits and answer and affidavits.

*Mr. Robert H. McCarter* and *Mr. Thomas N. McCarter*, for the complainants. ·

*Mr. Robert W. DeForest* and *Mr. Benjamin Williamson*, for the defendants.

VAN FLEET, V. C.

This is a contest between two railroad corporations. The complainants were organized under the General Railroad law. They have condemned a right to cross the defendants' road generally. The commissioners appointed to appraise value and assess damages awarded for such right, together with two small

parcels of land lying .on each side of the defendants' route, $12,950. Both parties appealed from the award of the commissioners, and on the trial of the appeals before the Essex circuit court by jury, the award was increased to $35,473.33. The verdict, it is admitted, was made up as follows:

| | | |
|---|---|---|
| For land ........................................................................... | $250 | 00 |
| For putting in frogs .................................................................. | 2,700 | 00 |
| For construction of signal station............................................. | 3,000 | 00 |
| For one-half of the cost of maintaining frogs in perpetuity............. | 6,000 | 00 |
| For one-half of the cost of maintaining and operating signal station in perpetuity.................................................................. | 23,523 | 33 |

The verdict, it will be observed, embraces not only compensation for the land taken, but also for duties to be performed perpetually by the defendants for the complainants. Within a few days after the rendition of the verdict, the complainants made a tender of $2,950, the amount awarded for the land and the insertion of the frogs, which the defendants refused to accept, and the complainants then obtained an order authorizing them to pay the whole sum of $35,473.33 into this court under the statute of 1877. The money was paid into court under this order, and notice given to the defendants that it had been so paid. The defendants' railroads, franchises and rolling stock were, when the condemnation proceedings were commenced, and also when the money was paid into court, subject to a mortgage for $50,000,000. The statute of 1877 authorizes the chancellor, whenever it is made to appear that lands taken by the exercise of the right of eminent domain are encumbered by a mortgage or other lien, to order the money paid into the court of chancery, to the end that it may be distributed according to law; and the statute declares that such payment shall have the same effect as if the money had been actually tendered to the land-owner. *Rev. p. 1278 § 2.* After paying the money into the court, the complainants gave the defendants notice that their road was completed up to the west line of the defendants' road, and that they could not extend their road further east until the obstructions were removed, which the defendants had placed at the point of crossing, and frogs inserted there in the defendants' road. By

the same notice, the complainants also notified the defendants
that unless they inserted the frogs on or before a date named, the
complainants would themselves proceed to insert them. The
defendants thereupon gave the complainants notice that they
would deem any attempt by the complainants to enter upon their
property, or to interfere with their railroad, as a trespass and
resist it accordingly. On the date designated by the complain-
ants as the time when they would themselves proceed to put in
the frogs, if they had not been put in before, the defendants col-
lected a large number of men at the crossing, for the purpose of
resisting by force any attempt which the complainants might
make to insert the frogs. At this point in the struggle the com-
plainants filed the bill in this case. They ask that the defend-
ants may be restrained from preventing them from entering upon
the defendants' road, at the point where their route crosses that
of the defendants, and also from molesting or interfering with
them while they are engaged in inserting in the defendants'
road, at that point, suitable and proper crossing frogs for two
tracks. The defendants oppose the granting of an injunction on
two grounds—*first*, they say that the complainants, by condemn-
ing a right to cross their road generally, have not acquired a
right to cross at grade, but that a condemnation in this form
simply gives a right to cross, leaving undetermined the way in
which such right shall be exercised, and that the question as to
the method of crossing, whether it shall be above, below or at
grade, is the proper subject of equity cognizance, to be decided,
to a large extent, by public considerations, and in such manner
as shall best promote public safety and convenience ; and, *second*,
they say that, as the sum awarded to them by the jury was,
with the exception of $250, intended as compensation for mate-
rials and work to be furnished and done by them for the com-
plainants, the money does not represent property encumbered by
the mortgage for $50,000,000, and therefore its payment into
court was not a payment or tender to them, within either the
words or spirit of the statute of 1877, and gave the complainants
no right to enter upon their route. They also say, that inasmuch
as the money was awarded as compensation for duties to be per-

formed by them in the future, they cannot, in justice, be required to perform any of such duties until they have consented to receive the money and it has actually been paid to them. They insist, that while it may be within the power of the complainants to take their property by the exercise of the right of eminent domain, still that they cannot, by any exercise of such right now authorized by law, be compelled against their will to perform duties, for all time to come, for the benefit of the complainants.

Two propositions of law and one of fact, bearing directly on the main question in dispute, are, in my judgment, so well settled and obvious as to be beyond question. They are—*first,* the complainants, by condemning a right to cross the defendants' road generally, have acquired a right to cross at grade. The law on this subject is settled. The established doctrine is this: that where a railroad corporation, formed under the General Railroad law, locates its route so that its line crosses the route of another railroad, the law gives it the right to decide for itself, whether it will cross such other road above or beneath its track or at grade, and that its right to cross at grade is subject to but two limitations—namely, *first,* it shall not cross at a less angle than twenty degrees; and, *second,* it shall not cross in such manner as will destroy the reasonably fair enjoyment of the franchises of the road whose route is crossed. It has a right to cross in such manner as will result in inconvenience and damage to the road whose route is crossed, but not in such manner as will destroy the reasonably fair enjoyment and exercise of its franchises. The most recent authoritative statement of the law on this subject is found in the chancellor's opinion, in *National Docks Railway Co.* v. *Pennsylvania R. R. Co., 24 Vr. 217,* where, in pronouncing the unanimous judgment of the court of errors and appeals, on this point, he said: "The right of one railroad to cross another, which is intersected by its route, is so plainly essential to its construction for any considerable distance, that it has become indisputably established, by implication, from mere authority to build a railroad between given points. * * * It is within the power of one railroad to determine by the location of its route

where it will cross another.   And is it impossible to perceive a sufficient reason why it may not also determine, within lawful bounds, how it shall cross the other.   *   *   *   In the acquisition of a right to cross, the ability of the existing company to fully, fairly and freely exercise its franchises is not to be destroyed.   It is not the policy of the law to cripple or destroy one highway for the purpose of creating another.   The purpose is to preserve, multiply and maintain highways for the development of the country and the general public benefit.   And this purpose is especially manifested in the General Railroad law, where there exists a prohibition against the condemnation of lands used for railroad purposes, except for a mere crossing.   But it does not follow that the precise existing use of the land crossed may not be interfered with.   There can be no reason why such use should not yield, if the proposed interference with it is necessary, and of a character that will not destroy the reasonably fair enjoyment and exercise of the franchises of the company whose road is crossed.   Ability to enjoy all its privileges and to perform all its duties in a proper and reasonable manner being secured to the latter company, it must, upon being duly compensated, submit to the necessary inconvenience and damage which the crossing may occasion."   It is thus seen that the law respecting the right of one railroad to cross the route of another at grade, in any case where such use of the route of the latter will not result in the destruction of the reasonably fair enjoyment of its franchises, is settled in such manner as to be no longer open to debate in this court.

*Second.*  With a signal station, skillfully operated, at the point of crossing, there can be no doubt, as a matter of fact, that the complainants' road may cross that of the defendants, at grade, without preventing the defendants from having the reasonably fair enjoyment of their franchises.   The crossing is on the meadows lying east of Newark.   The objections to a crossing, at such a point, are obviously much less weighty and serious than those which exist against the crossing at Elizabethport, which the defendants have, for many years, used for their Newark branch over their main line, or which exist against the crossing

at Elizabeth, jointly used by the defendants and the Pennsylvania Railroad Company. If the use of the two crossings just mentioned do not deprive the defendants of the ability to enjoy all their privileges and to perform all their duties, in a fair and reasonable manner, it is perfectly certain that the use of the crossing, which the complainants have acquired, cannot, for many years to come, produce such a result.

*Third.* What is just compensation for the property taken, and for the damages sustained by such taking, has been ascertained in this case in such manner as to give the complainants the right to appropriate the property condemned to their use, on making payment of the condemnation money, either actually or constructively. As I understand the General Railroad law, and the adjudications respecting its construction, the verdict of the jury, that tries an appeal from the award of commissioners, fixes finally and conclusively the sum which, in that particular case, must be regarded as just compensation, so far as may be necessary to confer upon the condemning company the right, on the payment of the money, to appropriate the property condemned. The award of the commissioners is the first step in ascertaining what is just compensation to the land-owner, and the verdict of the jury that tries the appeal from such award is the last and final step. "When," in the language of the chancellor in *Waite* v. *Port Reading Railway Co.*, *3 Dick. Ch. Rep. 346*, "an appeal shall have been taken, the award of the commissioners ceases to be the just compensation [guaranteed by the constitution]. It is then no longer the proper sum to tender, and its payment into court will be without legal significance. The result of the appeal determines how much the just compensation is, and the sum to be tendered and paid. For this reason there must be delay in taking possession until the appeal shall be determined. Through the necessity for delay, thus made apparent, the appeal operates as a *supersedeas* upon the previous proceedings." And the statute declares that when what is just compensation has been finally fixed by the verdict of a jury, that on the payment of that sum, or in case the money is tendered and payment refused, then on paying the money into court, the condemning company

" shall be empowered to enter upon and take possession of the said land and proceed with the work of constructing its road." *Rev. p. 929 § 101.*

The statement of these three propositions leaves but a single question to be decided, and that is, have the complainants made a payment or tender of the sum, which has been finally determined as just compensation, in such manner as gives them a right to take possession of the property condemned and proceed with the work of constructing their road? I think they have, but it is not necessary to decide the case on that ground. The sum of money which constitutes what is just compensation to the defendants, in the judgment of the law, is, in court, subject to its control. One of the reasons why it was paid into court, was because the defendants' railroad and franchises were encumbered by a large mortgage. Since the argument the mortgagee has filed a disclaimer, disclaiming all right, title and interest in and to the subject-matter of this suit, and praying that the complainants' bill, as to it, may be dismissed. This disclaimer is, in its legal effect, a release, so that there is now no reason why the money may not at once be paid to the defendants. They are now entitled to it, and it should be paid to them, if they are willing to take it. They cannot, however, take it without thereby becoming subject to all the obligations and duties which the jury, by their verdict, meant to impose upon them. The defendants should, I think, be afforded an opportunity to take the money and to perform the duties which its reception will impose.

An order will be made giving the defendants five days, after service of a copy of it, within which to decide whether or not they will accept the money. A written acceptance must be filed with the clerk. On an acceptance being filed, an order will at once be made directing the clerk to pay the money to the defendants. After receiving the money, the defendants will be required to proceed, with reasonable speed, in performing the duties which its reception will impose. If they refuse to receive the money, or fail to file an acceptance within the time limited, an injunction will be granted authorizing the complainants

25

to take such possession of the defendants' road, at the point where complainants' route crosses that of the defendants, as shall be necessary to enable the complainants to construct and insert, in the defendants' road at that point, suitable and proper crossing frogs for two tracks, and also restraining the defendants from interfering with or obstructing the complainants, in any way, while constructing and inserting such frogs. The injunction must, however, provide that all work which it shall be necessary to do at the point in question, whether it is done in removing obstructions or in preparing the defendants' road for the insertion of the frogs, or in putting in the frogs, shall be done under the direction and in accordance with the instructions of a manager to be appointed by the court, whose duty it shall be to see that all the work is done in such manner and at such times as will, in his judgment, cause the least possible injury to the defendants' property and business. The manager will, if possible, so conduct the work of inserting the frogs that no interruption in the running of trains over the defendants' road, according to existing arrangements, shall occur.