DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

MARCH TERM, 1895.

THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CONNECTING RAILWAY COMPANY, PLAINTIFF IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY ET AL., DEFENDANTS IN ERROR.

1. Under the act concerning the taking of property for public use, approved March 9th, 1893 (*Pamph. L., p.* 161), a defined plan of crossing another railway by a condemning railroad company may be amended upon appeal, by the appellate court, before trial, so as to facilitate the operation of both railroads.
2. Where a crossing through the right of way of another railroad company is sought by a condemning company, future demands upon that right of way, which are fairly and reasonably certain, are to be regarded by the tribunal which determines the just compensation to be awarded in reaching its conclusion.

On error to the Supreme Court.

For the plaintiff in error, *Charles D. Thompson* and *Charles L. Corbin.*

For the defendants in error, *Richard V. Lindabury* and *James B. Vredenburgh.*

The opinion of the court was delivered by

THE CHANCELLOR.    The subject-matter of this contro-versy is the condemnation of a crossing for the plaintiff's railroad under a car-yard and right of way belonging to the defendants.

We deal with two of the questions presented to us:

*First.* The method of crossing the car-yard and right of way is defined. Originally, in the proceedings before the commissioners, it was specified to be by an open cut, so walled that it might be covered by bridges for the accommodation of the car-yard, and it was upon such specification of the manner of crossing that the commissioners reached their finding. From the report of the commissioners, both parties to the proceeding appealed to the Circuit Court of Hudson county, and, upon issue being framed and the matter coming to trial there, the plaintiff in error moved to amend the method of crossing so that for a walled cut there should be substituted an arched tunnel in the same location, but at a lower grade than the cut, which would cause less obstruction in both present and future operation of the car-yard. The desired amendment was allowed, and, upon its allowance, the defendants assigned error. We think that the amend-ment was clearly permissible under the act concerning the taking of property for public use, approved March 9th, 1893. *Pamph. L., p.* 161. That act expressly provides that, upon appeal from the award of commissioners, the court to which the appeal shall be taken " may permit such amendments of the proceedings and plans as may be reasonable and proper for the fair trial of the case or for the promotion of the public purposes for which the power to condemn was conferred."

The purpose for which the power to condemn a crossing of another railroad is conferred is accommodation of the public. *National Docks, &c., Co.* v. *United Companies,* 24 *Vroom* 217. That accommodation contemplates not only facilities for the condemning railroad in the performance of its duties, but also the preservation of the usefulness of the railroad crossed in the exercise of its franchises. That which

tends to accomplish both these benefits undoubtedly promotes the public purposes for which the power of condemnation was bestowed. That the defendants here were deprived of the benefit of the judgment of commissioners upon the amended method of crossing was insufficient to defeat the amendment. It was competent for the law-making power to prescribe how the condemnation should be effected. It lawfully might have prescribed but one trial of the question as to just compensation before a single impartial tribunal, and by the same power, we think, it has authority to allow the amendment considered.

We are of opinion that the amendment was lawfully and justly permitted.

*Second.* The crossing sought to be condemned is to pass not only under the car-yard, but, immediately north thereof, under the railway now in use for the passenger traffic of the defendants to and from their terminus at the Hudson river, in the city of Jersey City. That railway, at the point in question, now consists of three tracks, two to the south and one to the north of the center of the right of way, which is one hundred feet in width and has been acquired for the uses of the main line of the defendants' railway. Those three tracks are necessarily constructed upon an embankment filled in over low land, in conformity with the established grade of the railway, easterly from Bergen Hill to its terminus at the river. At the place where the plaintiff proposes to cross, the defendants some years ago constructed two railway tracks under their main line, at right angles, or nearly so, thereto, for a purpose which has been abandoned, or is, at least, not material in the present inquiry. Over those last-mentioned tracks the three tracks on the main line right of way are conducted upon an iron bridge, which is supported by a stone abutment upon each side of the lower or abandoned tracks. The plaintiff proposes to make its crossing, in part, over the location of the abandoned tracks beneath the defendants' main line and between the abutments referred to. Those abutments and the bridge do not extend entirely across the de-

fendants' right of way, and hence, at the trial in the Circuit, the question arose as to the future use of the northerly part of the right of way beyond the northerly ends of the present abutments, and the defendants insisted that use of that northerly part, in the near future, was inevitable. They urged that their expense in utilizing it for the purposes of their main line, for which it was acquired, in absence of the plaintiff's crossing, would be the cost of filling the low land to the grade of their present main-line tracks, but as they will not be able to fill up the plaintiff's crossing, its existence will demand the extension of the abutments indicated and the erection of a bridge or bridges there over, and hence their damage by the crossing, in this particular, will be the excess of the cost of erecting and maintaining sufficient abutments and bridges over the cost of filling. It appeared that a short distance west of the point of the plaintiff's crossing the defendants' main line consisted of four tracks, two of which diverged northerly into a branch which leads to a freight terminus at Harsimus Cove, and that, a short distance east of the proposed crossing, the main line again consisted of four tracks, two of which were used for the transportation of cars between the passenger terminus and the car-yard under which the plaintiff proposes to pass, immediately south of the place of crossing the defendants' main line. The defendants urged that this condition of affairs, their acquirement of a right of way one hundred feet in width at the point in question, and the constantly-increasing demands of their business, presaged an inevitable demand for two additional tracks at the point of crossing in the near future, and thereupon they offered to prove the cost of construction of such additional abutments as would be necessary to accommodate two more tracks on their main line north of the tracks then existing there, which offer was overruled, on the ground that it presented a question as to the cost of a future and uncertain use, which was inadmissible in proof of the damages which would be occasioned by the crossing. Error being assigned upon this ruling, the Supreme Court reversed the judgment of the trial court.

We think that the trial court erred in overruling the offer. It should have submitted to the jury the question whether use of the defendants' right of way, in the manner insisted upon, was fairly and with reasonable certainty to be anticipated, and then have instructed the jury that if its answer to that question be in the affirmative, the measure of damage was that which the defendants contended for.

In a case of this kind, as in other condemnations, the damages must be assessed once for all time to come.

Here the condemnation is a mere easement of crossing under the grade of another railway, through the right of way of its main line. That right of way is a limited quantity of land which the legislature has determined might reasonably be appropriated, under the state's sovereign power of eminent domain, to answer the ordinary, increasing and emergent uses of the defendants' railway in a continued, convenient and safe accommodation of the public. *United, &c., Railroad Cos.* v. *Jersey City,* 26 *Vroom* 129. The defendants acquired it and hold it, not only for present but for future use, in the public service, with which its very being, under the law, is impressed. We think that they were entitled to show the surroundings of the *locus in quo,* its proximity to their railway terminus at the Hudson river, the general character and extent of their enterprise in that locality and such other circumstances as would have enabled the jury to intelligently determine from the evidence whether necessity for the suggested additional trackage was fairly and reasonably to be anticipated.

The error of the trial court, in the particular just indicated, leads to an affirmance of the judgment of the Supreme Court and precludes the necessity of our consideration of the other questions suggested at the argument.

*For affirmance —* THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, MAGIE, REED, BOGERT, BROWN, SIMS.   9.

*For reversal—*None.