THE NATIONAL DOCKS AND NEW JERSEY JUNCTION
CONNECTING RAILWAY COMPANY

*v.*

THE PENNSYLVANIA RAILROAD COMPANY and THE UNITED
NEW JERSEY RAILROAD AND CANAL COMPANY.

1. Where the aid of the court of chancery is invoked to effect the crossing
of one railroad by another, and it appears that the right to cross has been
duly condemned, and that the damages in condemnation have been based
upon a manner of constructing the crossing proposed by the junior road,
which is claimed to be unlawful or at least unfair, this court will, incidentally
to the exercise of its jurisdiction in the premises, determine the legality of the
proposed manner of crossing.

2. A preliminary injunction will not issue where the right of the complainant is in doubt.

3. An order which finally disposes of all matters involved in the cause will
ordinarily not be made until final hearing.

On order to show cause why injunction shall not issue.

Heard on bill, affidavits and schedules thereto annexed and
affidavits in reply.

*Mr. Gilbert Collins, Mr. Charles L. Corbin* and *Mr. Charles
D. Thompson,* for the motion.

*Mr. James B. Vredenburgh* and *Mr. Richard V. Lindabury,*
contra.

THE CHANCELLOR.

The complainant insists that it acquired a right of railroad
crossing under a car yard of the defendants by means of an
arched passageway of masonry, which cannot be constructed
without temporarily cutting the railway tracks in the yard, and
the object of the present application is to secure an injunction
which will require the defendants to, from time to time, as the
work of building the passage progresses, remove cars they may

store upon their tracks in the line of crossing, and keep them removed, while the construction at each point of removal continues in accordance with a manner of construction declared by the complainant in its condemnation proceedings.

The complainant is a railroad corporation organized under the General Railway law (*Rev. p. 925*) and its supplements. As its name indicates, it will serve as a connection between the National Docks and New Jersey Junction railroads, which will be about half a mile in length, entirely within the limits of the city of Jersey City. Commencing at the southerly end of its route and running northerly, the road starts at a point in the line of the National Docks railway, and crossing meadow lands and public streets for some one thousand five hundred feet, reaches the car yard of the defendants, which has its southerly boundary upon the northerly side of a public street of Jersey City called Railroad avenue, and is constructed upon an elevated plateau some twenty-three feet above the grade of the street. This yard is about five hundred feet wide. North of it the land is again low until the line of the New Jersey Junction railway is reached. The complainant proposes to cross this car yard by the passageway already indicated, the construction of which will necessitate the temporary opening of the surface of the yard, a portion at a time, for its entire width, and thereby the disturbance at different times, but in all, of twenty-one railroad tracks of the defendant, located and used over the line of the passageway.

Upon the trial of the appeal from the report of commissioners in the proceedings for the condemnation of the right to cross, the method of crossing the yard was, by an amendment to the petition, defined to be by the arched masonry passageway through a strip of land fifty-five feet wide, over which passageway, as the same should be completed, the car yard might be maintained and operated.

The proposed manner of constructing that passageway was also defined at that trial. It was declared by a writing filed with the clerk of the court to which the appeal was taken, that the complainant would commence work at the southerly side of

the car yard and progress in building northerly by sections, proceeding, as the language of the declaration states, as follows:

"*Second.* The connecting company will remove from their right of way the three southerly yard tracks of said owners, being tracks one, two and three, upon the commencement of their work, and thereafter will keep open during the progress of their work across the said yard tracks, three of the yard tracks of the said owners crossing the route of connecting company, which tracks shall be adjacent to each other, and the connecting company will complete their arch in sections, so that when yard tracks of the owners in excess of three in number shall be removed from the route in the course of construction, an opportunity shall be afforded concurrently therewith to the owners to relay and restore therewith to use a like number of those previously removed across the complete section of the arch, so that said owners, during the construction of said arch, may at all times have the opportunity to maintain and use all their yard tracks except three.

"*Third.* The connecting company will support the sides and the north end of each section of their excavation and for the further protection of the yard track next north of and adjacent to each section excavated, will, upon beginning excavation in such section, place stringers under such track across the route of the connecting company, commencing with yard track four (4), and when that track is taken up will shift the stringers to the track crossing the route next north of the second section excavated, and so on across the yard; such stringers to be placed in the manner usual in such construction and so that trains may be run over the track until such track shall be removed by the connecting company as above set forth; which stringers will be placed under each track in such manner as to leave it substantially at the elevation at which it may be found at the time the stringers are put in place.

"*Fourth.* The connecting company will locate the northerly line of the most northerly section but one of their excavation, at least sixteen feet southwesterly from the nearest point of the southwesterly rail of the westbound engine track, so that the eastbound engine track may be operated over said space left between the excavation and the westbound engine track; the centre line of the eastbound engine track to be located not more than fourteen feet distant from the centre line of the westbound engine track across the route of the connecting company during the progress of the excavation in said section, and the connecting company will not remove said eastbound engine track over said location until the arch shall be constructed so far northerly that the eastbound engine track can be shifted and used by the owners across the completed part of the arch if they desire so to do."

During the trial in the circuit court the defendants insisted that the proposed manner of constructing the crossing, by cutting their tracks, would unnecessarily and unreasonably interfere with the use of their car yard while the work progressed, and they

suggested a manner of construction which would involve the support of the tracks at all times and urged that their plan is feasible and, though perhaps more expensive to the complainant, will be attended with less damage and inconvenience to themselves. Their insistment was that the complainant must adopt that manner of construction which, being reasonable under all circumstances, will cause the least possible damage and inconvenience to them. They offered to prove the utility of the manner of construction thus suggested, but the court overruled the offer upon its conclusion that the complainant has the right to declare the manner of constructing the crossing for the purposes of the condemnation, and that the question whether that manner of crossing would be enforced would properly arise in this court, if its aid should be invoked by either party. The trial then proceeded upon the complainant's plan of crossing and prescribed manner of execution, and the damages were accordingly assessed by the jury. The amount found by the verdict of the jury has been tendered to the defendants and they have refused to accept it, and it has been duly paid into court. The complainant has entered into possession and executed part of the work of construction of its crossing, and, upon coming to the first of the defendants' tracks, has been stopped by cars stored there and by other obstructions.

The jurisdiction of this court in the premises rests in the existence of mutual rights in the complainant and defendants in the use or easement of the strip of land in which the crossing is to be constructed, the appropriate enjoyment of which rights equity will control and regulate, upon being satisfied that the parties cannot agree with respect to the same. *National Docks &c. Railroad Co.* v. *United Companies, 24 Vroom 217.*

The complainant insists that the easement it has acquired is a crossing which has been defined in the condemnation proceedings, not only as to the character and location of its structure, but also as to the manner in which it is to be constructed, and that both the character of the crossing and the manner of its construction are wholly within its discretion and beyond question by the defendants.

14 CASES IN CHANCERY. [54 Eq.

Nat. Docks Ry. Co. v. Penna. R. R. Co.

I do not agree with this proposition. In *National Docks &c. Co.* v. *United Companies, supra,* the court of errors and appeals held that a railway company condemning a crossing over another railroad might determine by specification in its petition where it would cross and, "within lawful bounds," how it would cross the senior road, the legality of the proposed crossing being by such specification made reviewable by *certiorari* prior to the conclusion of the condemnation, and the court took the precaution to add that if when the easement of crossing should be acquired, conflict should arise as to its use, the intervention of this court could be invoked. That case recognizes the law to be in accord with the public benefit; that railroads, as *quasi*-public institutions, designed to develop the country through facility in transportation, may be multiplied and maintained, to accomplish which result a new or junior railroad is permitted to cross its established senior, provided the crossing shall not destroy the ability of the senior to fully, fairly and freely exercise its franchises; that by this is meant not an ability of the senior to continue with the same appliances exactly located as theretofore, but an ability in it to freely and fairly exercise its franchises substantially as theretofore, yielding to such reasonable changes and such reasonable temporary disturbance and consequent inconvenience as the necessities of the crossing and the work of its construction may occasion. The question, what is a reasonable temporary disturbance and inconvenience, arises upon the suggestion of the manner in which the work of building the crossing may be accomplished. If it is not raised by the petition in the condemnation proceedings so that its legality may be considered upon *certiorari,* this court will determine it when it is appealed to by either party to regulate the use of the mutual easement, as a matter incident to the exercise of its jurisdiction in the premises.

The complainant now seeks the aid of this court to enforce its proposed manner of crossing. That manner will deprive the defendants of the use of three or more of their tracks at one time for an indefinite period. Is such deprivation reasonably necessary? Will its enforcement amount to destruction or

unlawful impairment of the ability of the defendants to fairly
enjoy and exercise their franchises? These questions challenge
the legality of the proposed manner of construction. *National
Docks &c. Co. v. United Companies, supra.* The defendants
offer affidavits to show that the proposed manner of construction
will be so far destructive of the reasonably fair enjoyment of
their car yard as to be unlawful, or, though it be within legal
bounds, it is yet so unreasonable and unfair that equity will not
lend its aid to the enforcement of it, and they insist that the
court will not require the defendants to submit to it until, after
final hearing upon proofs regularly taken, it shall with full
deliberation have passed upon these questions.

It is apparent, if I now grant the injunction desired, that the
complainant will proceed to complete its crossing pending final
hearing and do the very injury which the defendants deny its
right to do. In such a situation a preliminary injunction should
not issue. *Citizens' Coach Co. v. Camden Horse Railroad Co.,
2 Stew. Eq. 304; Haggerty v. Lee, 18 Stew. Eq. 256.* In a
former application for injunction in this matter upon a pre-
liminary hearing, after argument upon facts presented by *ex
parte* affidavits, following the precedent in *Jersey City, Newark
and Western Railroad Co. v. Central Railroad of New Jersey,
3 Dick. Ch. Rep. 379,* I granted an injunction which, in effect,
prescribed a method for the construction of this very crossing—
no method having been declared in the condemnation proceed-
ings—and my action was reversed by the court of errors and
appeals, upon the point being made in that court, that I had
anticipated that which should not have been determined until
after final hearing. Mr. Justice Gummere, who wrote the
opinion of the court of errors and appeals in that matter, said
upon this point: "Moreover, the order appealed from, although
it purports to be a mere preliminary order, made in the inception
of the case, and upon *ex parte* affidavits, is, in reality, nothing
more nor less than a final decree, for it disposes absolutely and
finally of every matter which is involved in this suit. An order
or decree of this character can only be made upon final hearing-

had upon pleadings and proofs taken upon due notice and in accordance with the rules and practice of the court."

While I doubt not that the court of errors and appeals intended to decide that the order considered in the case before it wrongly anticipated that which should have been held undetermined until final decree, I am persuaded that it could not have meant to broadly hold, as the language of the opinion appears to imply, that cases may not arise in which a preliminary injunction may be allowed, which, in effect, will decide all questions involved in the suit. An instance of the kind is suggested by Mr. Justice Magie, in the opinion of the court of errors and appeals, in *Delaware, Lackawanna and Western Railroad Co.* v. *Central Stock Yard Co., 16 Stew. Eq. 605, 612,* in this language: "Circumstances may be presented of so extraordinary a character as to justify the issue of a mandatory injunction *in limine.* If the whole case be before the court and the right to the injunction clear, and if no injury is done to the party enjoined by its issue, but, by its refusal, irreparable injury is done to the applicant, then it would not savor of equity to deny the injunction."

My understanding is that our courts have always recognized the right of a court of equity, in a proper case, to grant a mandatory injunction after preliminary hearing, even though that be the whole relief sought in the case. *Rogers Locomotive &c. Works* v. *Erie Railway Co., 5 C. E. Gr. 379; Thropp* v. *Field, 11 C. E. Gr. 83; Longwood Valley Railroad Co.* v. *Baker, 12 C. E. Gr. 166; Shivers* v. *Shivers, 5 Stew. Eq. 578; Wakeman* v. *New York, Lake Erie and Western Railroad Co., 8 Stew. Eq. 496; Whitecar* v. *Michenor, 10 Stew. Eq. 6; Lord* v. *Carbon Iron Co., 11 Stew. Eq. 452; Delaware, Lackawanna and Western Railroad Co.* v. *Central Stock Yard Co., 16 Stew. Eq. 75; S. C. on appeal, 16 Stew. Eq. 605; Hodge* v. *Giese, 16 Stew. Eq. 342, 350; Bailey* v. *Schintzius, 18 Stew. Eq. 178.*

I apprehend, then, that the court of errors and appeals meant to decide that the case considered, which in effect was designed to permit the removal of an obstruction to the enjoyment of an easement, did not present such features, including clear right

and great hardship, as would justify the anticipation of final decree. So understood, I think it rules the present case.

I will deny the injunction so far as it is desired to put in force the complainant's declared manner of crossing the tracks of the defendants, but will grant it so far as it is necessary to protect the complainant's possession of the place of crossing up to the first track in the defendants' car yard, restricting such possession in use so that it will not disturb that first track.