### ELIZABETH VAIL v. THE MORRIS & ESSEX RAILROAD COMPANY.

1. On application for appointment of commissioners to assess value of lands taken by a company for a road, it is necessary, upon established principles of law, independent of requirements in the charter, that the land owner should be distinctly apprised of the location and quantity of land to be valued, and also that the application itself should be in writing, and shew the same.

2. The Act to incorporate the Morris & Essex Railroad Co. passed January 29, 1835, *Pam. L.* p. 25, construed to require that the location of road

should be fixed and filed with Secretary of State before any application for commissioners to assess value of lands taken, can be made.

3. The variation of the line of said road authorized by § 4 of Supp. passed March 2, 1836, *Pam. L.* 223, invalid without the certificate of inspector, or without being recorded in office of Secretary of State.

4. If said company, after making application for commissioners to value lands of E. V., change the route over lands of E. V., commissioners appointed on *that application* cannot value lands on *new route.*

5. Before such commissioners can be appointed, there must be an inability of the company to agree with owner, and this must appear on the proceedings.

6. The award of commissioners under said act, must contain a clear description of the land taken, with reference to permanent monuments, and with definite and intelligible boundaries.

———

This case came before the court on a *Certiorari* issued out of this court, directed to the clerk of the county of Morris, to remove the appointment and proceedings of commissioners appointed on the application of the defendants in *Certiorari*, to assess the value of the lands of the plaintiff in *Certiorari*, taken by them for the construction of their road by virtue of their original act of incorporation, passed January 29, 1835, *Pam. L.* 25, and the Supplement thereto passed March 2, 1836, *Pam. L.* 223. The facts of the case, and the objections to the validity of the appointment and proceedings, sufficiently appear in the opinion of the court.

Argued before the CHIEF JUSTICE, and NEVIUS, J.

*Littell,* for plaintiff in *Certiorari.*

*A. Whitehead,* for defendants.

The CHIEF JUSTICE delivered the opinion of the court.

This *Certiorari* removes into this court the appointment and proceedings of commissioners appointed to assess the value of certain lands of the plaintiff, upon which the defendants have located their branch road to Dover, and the damages sustained by the plaintiff by reason of such location.

These proceedings were instituted under the 7th section of the act incorporating the Morris & Essex Railroad Co. By that section it is enacted, that if the owner of the land on which such railroad or railroads should be made, shall not be willing to give the same for such purpose, and the said company and owner cannot agree as to the price of the same, it shall be the duty of any judge of the Inferior Court of Common Pleas of the county in which the said disputed lands shall lie, who is disinterested in the premises, upon the application of either party, and after giving ten days' notice in writing to the opposite party, of such application, and after hearing the parties to appoint three disinterested commissioners of such county to assess the price or value of said land; and that upon payment or tender of the sum found by the said commissioners with costs, if any, the said corporation shall be deemed to be seized and possessed in fee simple of all lands and real estate appraised, pursuant to the provisions of the said act.

The radical defect apparent upon the face of these proceedings is, that it does not appear that the landholder, whose title was sought to be divested, was in any way informed, previous to the meeting of the commissioners, of the location or quantity of the land required by the company for the use of their road. The proceedings were instituted for the purpose of divesting the landholder of the title to his freehold, and vesting it in the company. Every principle of law, every dictate of justice, requires that in such a proceeding the landholder should be distinctly apprized of the extent of the claim made by the company, and of the location of the land of which he is to be disseised.

The statute requires that the landholder shall have notice of the meeting of the commissioners. He is entitled to be heard before them, and to establish his claim by evidence. But of what avail is his right to be heard and to produce evidence, if he is not distinctly informed of the location of the road and the quantity of the land required by the company for its use. Without this information, how can he be prepared to shew the extent of his damages?

It is true, the charter does not in express terms require such

specification to be made in the application for the appointment of commissioners, but this necessity cannot be rendered more imperative, or its propriety more obvious by legislative sanction.

In the present instance, no application in writing is presented to the justice, nor is any description or specification of the land filed with him. The proceeding is commenced by a notice from the company to the freeholder, "that an application will be made to assess the price or value of the land owned by him, over which the said company have located their branch road from their original road to Dover, and all the damages which the commissioners so to be appointed are authorized to assess."

This is the whole specification upon the face of the proceedings. No reference is made to any other record where the requisite information may be procured. If we look beyond the record itself to the evidence offered in the cause, the illegality of the whole proceeding is rendered more apparent. The act of incorporation requires that a survey of the route of the road should be deposited in the office of the Secretary of State. To that source the landholder would naturally look for information as to the extent of the claim of the company, and the manner in which his rights were to be affected.

By the evidence, it appears that a survey of the branch road from Dover to the Morris & Essex Railroad, was filed in the office of the Secretary of State on the 19th of June 1846. This paper is a mere specification in figures of the courses and distances of the survey, without any designation of the lines of lands, or reference to a single monument from the beginning to the ending point. If this be at all a compliance with the requirement of the act (upon which it is unnecssary here to express any opinion), it is manifestly entirely useless to the landholder. It gives him no information whatever as to the location of the road upon his land, nor can he ascertain it except by a survey of the whole route.

On the 15th of August, 1846, a second survey was filed of part of the route diverging from the former route, and equally general in its description. On the 2d of September, 1846, a 3d survey was filed of a similar character with the others. Two at least of these three routes crossed the land of Elizabeth Vail.

The last survey, according to which the road was finally located, was made after these proceedings were instituted, and after the appointment of the commissioners had been made.

It further appears that at least three routes were surveyed and staked across the plaintiff's land previous to the appointment of the commissioners. It appears, therefore, not only negatively from the face of the proceedings, but affirmatively from the evidence in the cause, that the landholder could not know with certainty what land the company designed to take for the use of their road. There was no specification in the proceedings themselves, no record elsewhere to which she could have recourse for information. The surveys on file were not only vague, but conflicting. Three different routes across the land had been run and marked. It was impossible that the landholder should know which route would be finally adopted.

It is further apparent from this evidence, not only that the proceedings are irregular, but that the change in the location of the route across the lands of the plaintiff was made without sanction of law.

By the 4th section of the Act of the 2d of March, 1836, the company are authorized to vary the route of the road as first surveyed and recorded at such points and places as in the opinion of their engineer may best promote public convenience and the interest of the company. But such change must be first sanctioned and approved by a suitable inspector; a certificate of whose appointment and approval shall accompany the return and survey of such alteration, and be recorded in the office of the Secretary of State.

The 5th section of the act of the 22d of February 1838, was, I conceive, designed to apply to the road between Newark and Morristown, as then surveyed and recorded; and not to the branch, or lateral roads authorized by the act of 1836. The company manifestly so understood it, else why file a survey of the route, and of the variations of the route in the office of the Secretary of State? The filing of the survey is perfectly nugatory, if the company may at their pleasure shift the line of the route without making any record of the change.

But admitting that the company are entitled to change the

route of their road at pleasure, without making any record of the alteration, or giving the landholder any notice of the change, still it is obvious that these proceedings cannot be sustained. The company had deposited in the office of the Secretary of State, a survey of the route of the road, different from that where the road was finally located. That survey was on file when these proceedings were commenced. Subsequent to that time a new survey was filed, and a new route adopted. It is enough to say that there is no evidence that such new route was adopted prior to the application for the appointment of commissioners. Every presumption is the other way. It is too clear to admit of question, that proceedings cannot be commenced by this company under their charter to procure title to one piece of land, and end in their acquiring title to another. If the Act were silent as to the mode of proceeding, such a measure would be obviously illegal. But by the very terms of the act, the proceeding can only be instituted where the company and the landowner cannot agree as to the price of the land on which the road is to be made, and it is the value of the *said* land which the commissioners are to assess. There must be an inability to agree with the owner as to the price, or the judge has no jurisdiction. But how can there be an inability to agree as to the price, when in point of fact, the route was not finally located when the proceedings were instituted?

Another exception taken to these proceedings is, that the description and boundaries of the land as contained in the award of the commissioners, are not such as the law requires. The Act requires "that the commissioners shall transmit their award or decision, together with a description of the said land, and the quantity taken, by whom owned, and how situated, bounded, and described in writing under their hands and seals, or under the hands and seals of a majority of them, to the judge who appointed them, to be by him returned and filed, together with all papers before him relating thereto in the clerk's office of the county, there to be kept as a public record." The description of the land in the award is as follows: " Beginning at the east line of Stephen Conger's land, and runs eastwardly by a curved line as the stakes now stand, to Sela Tompkins' land embracing

a space of two rods in width on each side of said line of stakes, and containing four acres of land."

Now it is manifest that this description is not a compliance with the letter, much less with the spirit of the act. The design of the requirement was, that there should be a precise and intelligible description and designation of the boundaries of the land to which title was to be acquired by the company. The proceeding is to operate as a deed to change the title, and the description of the land should be equally specific as in a deed. The landholder is entitled to know the precise limits of the company's title, to enable him to resist aggression, and to protect his rights. But here is no fixed monument for a beginning, no courses, no distances, nothing but a reference to a line of stakes, liable at any moment to be removed, and which it may be presumed were necessarily removed or destroyed in the construction of the road. How is it possible for the landholder, from such a description, to ascertain the extent of his title or the boundaries of his land? True, there is a reference to a map annexed to the award. But the statute recognizes no such evidence of title. It requires that the description and situation of the land shall be given, and that the land shall be bounded and described *in writing, under the hands and seals of the commissioners.* The map cannot aid the description. And if it could, it designates no beginning point, and no fixed monument by which the lines are to be run. It varies moreover in several particulars from the route designated in the survey, deposited by the company in the office of Secretary of State. These are probably clerical inaccuracies, but if so, it exhibits clearly the danger and impropriety of suffering title to freehold to depend upon a mere map and designation of courses and distances by figures.

In order to have rendered these proceedings legal and availing to divest the landholder of his title, I am of opinion,

1. That the route of the road over the lands of the plaintiff should have been determined upon, and the survey thereof deposited in the office of the Secretary of State before the proceedings were instituted.

2. That it should appear upon the face of the proceedings

that the company and the owner were unable to agree for the price of the land.

3. That the application for the appointment of the commissioners should have been in writing, and should specify clearly and intelligibly, either in terms or by reference to the survey, or record, for what land the company were proceeding to acquire title.

4. That there should have been a clear and intelligible description of the land and of its situation and boundaries in writing under the hands and seals of the commissioners, transmitted to the judge, and by him filed in the clerk's office of the county.

Without considering the numerous other exceptions which have been taken and relied upon in argument, I am of opinion that these proceedings are illegal, and as against the plaintiff in *Certiorari* must be set aside and declared void.

CITED *in Doughty* v. *Som. & East. R. R. Co.*, 1 *Zab.* 458; *Coster* v. *N. J. R. R. Co.*, 3 *Zab.* 233–234; *Den* v. *Mor. Can. & Bk'g Co.*, 4 *Zab.* 591; *State* v. *Mayor, &c., of Newark*, 1 *Dutch.* 412; *State* v. *Hud. Tunnel R. R. Co.*, 9 *Vr.* 554.

☞ The Reporter thinks that no apology will be deemed necessary to the public or the bar for inserting in this place the following opinions of the late CHIEF JUSTICE, on two very important and interesting subjects, the law of *challenge to jurors* in criminal cases, and the plea of *insanity*, as an excuse for crime. These opinions are understood to have received the approbation of many eminent jurists and lawyers, both in and beyond the State, and their practical importance brings their publication within the spirit and design, if not within the letter of the law prescribing the duties of the reporter.