576 A.2d 323

COUNTY OF MONMOUTH, PLAINTIFF–RESPONDENT, v.
WILLIAM A. KOHL AND PATRICIA J. KOHL,
DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 30, 1990—Decided July 2, 1990.

Before Judges MICHELS, DEIGHAN and BROCHIN.

*Robert V. Carton* argued the cause for appellants (*Carton, Witt, Arvanitis & Bariscillo,* attorneys; *Robert V. Carton,* of counsel and on the brief).

*Richard T. O'Connor* argued the cause for respondent (*Richard T. O'Connor,* Special County Counsel, attorney; *Richard T. O'Connor,* on the brief).

PER CURIAM.

This is a condemnation case. Defendants William A. Kohl and Patricia J. Kohl owned a plot of land, slightly less than an acre in area, which had a frontage of approximately 71 feet along the southerly right-of-way of Monmouth County Route 520 in Middletown, New Jersey. Where the Kohls' property was contiguous with the right-of-way, the roadway curved to the south. A building on their property extended almost to the highway right-of-way and interfered with the sight lines of east bound motorists as they were approaching the curve. The County therefore undertook to acquire a strip of the Kohls' property fronting on the highway and to demolish the building insofar as necessary to eliminate the interference.

Monmouth County's complaint for condemnation described the property to be taken by metes and bounds and also included a sketch of the Kohls' entire lot, of the part to be condemned, and of the adjacent section of the highway. The metes and bounds description and the sketch showed that the strip of defendants' property which the County was taking was bounded on the north by the highway, on the east and west by their lot lines, and on the south by a line approximately 17 feet distant from and parallel to the highway right-of-way.

The decription and sketch annexed to the complaint indicated that the property being taken represented approximately three percent of the total area of the Kohls' lot and included the front portion of their building. The building consisted of a one-story front section and a one-and-a-half story rear section. Only part of the front section of the building was within the strip of

property which the County condemned. But if part of the front section of the structure was demolished, the entire front section would be unusable and would have to be razed. The one-and-a-half story rear section, however, was structurally independent of the front section and, with cosmetic repairs where the two sections were severed, would continue to be usable. Just compensation for the condemnation therefore included the fair market value of the land which was taken and of the entire front section of the building which was to be demolished, and the cost of making the cosmetic repairs to the remaining structure.

The complaint alleged that just compensation was $35,000, and that sum was deposited in Court. An order for judgment and for the appointment of commissioners was entered without opposition, and the defendants withdrew the funds on deposit. The commissioners awarded $35,000 as just compensation, and the defendants appealed by trial *de novo* before a jury pursuant to *N.J.S.A.* 20:3–13. The jury returned a verdict of $50,000 as damages for the strip of property taken in fee, for the value of the building which was demolished, including that part of the building which extended beyond the property taken, and for the cost of restoring the rear section of the building after the front section had been razed.

The defendants have appealed the judgment entered on that verdict to this court. They allege that the description of the property to be taken which was contained in the plaintiff's complaint was so ambiguous as to deprive the trial court of jurisdiction and that the court erred in not granting their request to adjourn the trial. We disagree and affirm.

At the commencement of the trial on the issue of just compensation, the County made a motion "for an order regarding the description of the taking." It submitted an affidavit in support of its motion which outlined the history of the proceedings and asked the court to declare that:

the taking is for the strip of land, approximately 17 feet wide and 71 feet long containing approximately 1246 ± s.f. and that this acquisition involved compensation for the 694 ± s.f. front one-story section of the building which would have been demolished by the County ... [and] that the property owner should be barred from claiming that there is any additional taking.

The responding certification filed on behalf of the defendants contended that in addition to the strip of land described in the complaint, "there is also a taking of a site [sic] easement which covered the land upon which the front section [of the building] stood that was not within the shaded area." This allegation was based upon a legend on the sketch of the taking which reads, "Front section of the building is to be acquired and removed for sight distance purposes." An arrow points from that legend to the portion of the building which was outside the condemned area, but which had to be demolished for structural reasons.

The trial court's ruling was as follows:

I find as a matter of law at this proceeding, that the property acquired by the County or sought to be acquired by the County is in fact, described with such certainty that there can be no room for doubt or misapprehension as to the land to be taken by them.

In paragraph 3 of the complaint, the complaint recites, "Plaintiff has determined to acquire for roadway improvements, the land hereinafter described."

.    .    .    .    .    .    .    .

Now, the Exhibit A, which is the description of the land is a metes and bounds description with specificity. And if one applies that or uses that description in conjunction with the map marked Exhibit B, one finds that it only includes the 17 foot strip along the front of the property, and if one follows the course descriptions, it covers the front of the property and I guess in total is about 1,246 square feet, plus or minus, in totality of land.

■ Defendants have argued at some length on appeal that an ambiguity in the plaintiff's description of the property that was condemned deprived the Law Division of jurisdiction. First of all, even if the argument were correct, it would be immaterial because we agree with the trial court that the description of the property to be taken which is contained in plaintiff's complaint was not ambiguous. Secondly, we are of the view that the legal premise of defendants' argument, that an ambiguity

in the description of the property to be taken deprives the court of jurisdiction, is erroneous.

The defendants rely for their jurisdictional argument upon language in *Housing Auth. Atlantic City v. Atlantic City Expo.*, 62 *N.J.* 322, 328, 301 *A.*2d 441 (1973) which reads as follows:

> What we have said is not to be taken as indicating any change in the very basic rule that the land to be condemned must be described with such certainty as to leave no room for doubt or misapprehension as to the land actually to be taken. Failure in this respect is a violation of substantive due process and will vitiate the proceedings.

For that statement the Court cited *National Docks, etc., Co. v. United Companies*, 53 *N.J.L.* 217, 226–227, 21 *A.* 570 (E & A 1890); *Winter v. Telephone Co.*, 51 *N.J.L.* 83, 16 *A.* 188 (Sup.Ct.1888); and *Vail v. Morris & Essex R.R. Co.*, 21 *N.J.L.* 189, 191 (Sup.Ct.1847). The language of the statement should therefore be understood in the light of those cases. *National Docks* involved the right of one railroad company to condemn property of another railroad company for the purpose of a crossing over the condemnee's tracks. The opinion held that the legislation chartering the condemnor authorized it to condemn property only within its located route and that that route, as filed, was indefinite. Because of the ambiguity of the filed route, the opinion concludes, the route

> as ... now designated ... is so indefinite and uncertain that it is impossible to say that the land sought to be condemned is all within the [condemnor's] located route. We think that this uncertainty vitiates the proceedings reviewed.[1] *National Docks, supra*, 53 *N.J.L.* at 227, 21 *A.* 570.

---

[1] It may be noted that this opinion, written by the Chancellor sitting as a judge of the former Court of Errors and Appeals, was for affirmance of the judgment appealed from. However, that judgment was actually reversed. A majority *per curiam* opinion says, "The judges voting to reverse the judgment of the Supreme Court in the above entitled cause concur in the opinion delivered by the Chancellor, except so far as it holds the petition to be defective. Deeming the petition sufficient, we think the judgment below should be reversed." *National Docks, supra*, 53 *N.J.L.* at 218, 21 *A.* 570. Thus the majority did not consider the description of the condemnor's route so ambiguous as to vitiate the proceedings.

*Winter v. Telephone Co., supra,* dealt with the right of a telephone company to locate telephone poles. The court said:

> There is ... a failure to give a proper description of the poles and the premises to be occupied by them, so that the burden to be imposed upon the relator and the right to be acquired by the company will be defined and settled. *Id.* 51 *N.J.L.* at 84, 16 *A.* 188.

*Vail v. Morris & Essex R.R. Co., supra,* attacked a condemnation judgment because:

> The radical defect apparent upon the face of these proceedings is, that it does not appear that the landholder, whose title was sought to be divested, was in any way informed, previous to the meeting of the commissioners, of the location or quantity of the land required by the company for the use of their road.... *Id.* at 191

The ambiguities exemplified by these cases are not of the sort which the defendants claim to have discovered in the present case. The test of whether an ambiguity will "vitiate" the proceedings is whether it leaves the condemnee justifiably uncertain about the boundaries and extent of the property to be acquired. However, *Housing Auth. Atlantic City v. Atlantic City Expo., supra,* the case upon which defendants principally rely, illustrates the proposition that a description of property which is made "certain" by judicial construction is adequate to support a condemnation proceeding. The issue in that case was whether the condemnor acquired the condemnee's interest in a public street abutting the condemnee's property. The description of the property to be condemned did not expressly refer to the interest in the street. But the Supreme Court, disapproving a contrary holding in a decision of the former Court of Errors and Appeals,[2] held that the rule "that a description of property appearing in a deed which carries only to the sideline of a road will be sufficient ... to convey title to the center line of the road, assuming the grantor to have had such title" applied to a title acquired by condemnation. *Housing Auth. Atlantic City, supra,* 62 *N.J.* at 326, 301 *A.*2d 441. In the present case, the

---

[2]In *National Docks & N.J. Junction Connecting R.Y. Co. v. United New Jersey R.R. & Canal Co.,* 52 *N.J.Eq.* 366, 376–378, 28 *A.* 673 (Ch.1894), aff'd 52 *N.J.Eq.* 552, 555, 30 *A.* 580, 581 (E & A 1894).

ambiguity, if any, in the description of the property to be taken was not sufficient to "vitiate" proceedings and the ambiguity was entirely removed by the trial court's ruling on the County's motion.

■ The County condemned the defendants' property in this case pursuant to the Eminent Domain Act of 1971, *N.J.S.A.* 20:3-1 and following. Under that statute, "Amended and supplemental pleadings, descriptions, surveys, plans, declarations of taking and the like, may be permitted and parties added or eliminated, in accordance with the rules." *N.J.S.A.* 20:3-7(c) "Rules" is defined to mean "the applicable rules governing the courts of the State of New Jersey as promulgated from time to time by the Supreme Court of New Jersey." *N.J.S.A.* 20:3-2(f). *See State v. Bakers Basin Realty Co.*, 138 *N.J.Super.* 33, 43, 350 *A.*2d 236 (App.Div.1975), aff'd 74 *N.J.* 103, 376 *A.*2d 1189 (1977). *Cf. State v. Applegate*, 107 *N.J.Super.* 159, 257 *A.*2d 717 (App.Div.1969). In the present case, the trial court's ruling that the property to be condemned consisted solely of a fee interest in a strip approximately 71 feet by 17 feet in area, without any sight easement over any property retained by the defendants, was, in effect, a permissible amendment of the plaintiff's complaint. *See R.* 4:9-1; *State v. Sun Oil Co.*, 160 *N.J.Super.* 513, 520-530, 390 *A.*2d 661 (Law Div.1978).

■ The defendants' second ground of appeal is that the trial court erred by declining to grant their request to adjourn the trial. They contend that their valuation expert was prejudiced in his ability to testify because, prior to the court's ruling that the County was taking only a fee interest in the 17 foot by 71 foot strip, he had been under the impression that the taking included an additional sight easement. The trial court, however, quite reasonably expressed the view that the defendants' valuation expert should have no difficulty reducing his valuation by whatever amount he attributed to the sight easement. Their request for an adjournment was therefore denied. In our opinion, the court's ruling on this issue was well within its discretion.

■ The defendants also claim that they were prejudiced by the trial court's refusal to permit their expert to include in his damage estimate the consequences of their inability to obtain a set-back variance for their property. Although the County compensated the defendants as if it had demolished the front portion of their building, in fact they were permitted to move that section of their structure to the back of their lot. Evidently they anticipated being able to attach what had been the front of the building to the rear of their remaining structure. The record submitted to us is unclear, but the variance was apparently denied. The defendants imply that the denial was related, somehow, to the issue of whether or not the County acquired a sight easement. However, they have not explained the connection, if there is one, either to the trial court or to us. On the basis of the facts presented to the trial judge, he ruled correctly that since the County had paid the defendants for demolishing the front portion of their building, they were not entitled to prove that additional severance damages resulted from their inability to utilize the removed structure.

The judgment under appeal is therefore affirmed.