208 N.J. Super. 1 (1985)
504 A.2d 1180
SOCIETY FOR ENVIRONMENTAL ECONOMIC DEVELOPMENT, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1985.
Decided July 15, 1985.
*3 Before Judges PRESSLER, BRODY and COHEN.
Steven J. Picco argued the cause for appellant (Greenstone and Sokol, attorneys; Neil Yoskin and Patrick D. Kennedy, on the brief).
Rebecca Fields, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Rebecca Fields, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
On May 21, 1984, following a series of hearings, the Department of Environmental Protection (DEP) promulgated comprehensive regulations governing development in fresh-water flood hazard areas, N.J.A.C. 7:13-1.1 to 7.1, inclusive. Appellant Society for Environmental Economic Development, an association of developers and property owners, challenges three provisions of the regulations: the so-called 20% net fill rule, N.J.A.C. 7:13-4.7(d); the creation of a category of Projects of Special Concern, N.J.A.C. 7:13-5.1, et seq., subject to discrete jurisdictional, *4 procedural, and substantive regulation; and the so-called grandfather clause, N.J.A.C. 7:13-1.4(d), which makes the comprehensive regulations applicable to applications accepted by DEP as complete on or after January 15, 1984.
We have considered the challenges to these provisions of the comprehensive regulations in accordance with the well-settled principles of administrative law which accord a presumption of validity to regulations which fall within the scope of the statutorily delegated authority and are not ultra vires on their face, and which require liberal construction of the enabling statute in order to effectuate the legislative purpose where questions of public health, safety and welfare are involved. See, e.g., GATX Term. Corp. v. Environmental Prot. Dep't, 86 N.J. 46 (1981); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544 (1978). As so tested, we conclude that the challenged provisions meet the criteria of validity.
We consider first the 20% net fill rule. N.J.A.C. 13:4-7(d)(1) provides:
The volume of net fill and structures to be placed on an applicant's property shall be limited to occupying 20 percent of the total volume of net-fill which:
i. Is from within the flood fringe area of delineated streams or within the 100-year flood plain, but outside of encroachment lines, of non-delineated streams; and
ii. Which is also from between the natural or existing ground surface, which ever is lower, and the level of the flood hazard design elevation along delineated streams or the 100-year storm elevation along non-delineated streams.
The first basis of appellant's challenge to this provision is the contention that DEP failed to provide the public with any technical justification for the 20% net fill rule during either the pre-proposal or proposal process, thus depriving the public of an opportunity to challenge the predicates on which the rule was based. This defect, it urges, could not have been cured by the post-adoption technical justification.
Our review of the record satisfies us that there was sufficient pre-adoption explanation to permit the substance of the rule to be adequately dealt with by its opponents and that *5 there is in fact adequate technical justification to support the designation of 20% as the net fill maximum. William Whipple, administrator of the Water Supply Administration, Division of Water Resources, of the DEP and the hearing officer who presided at the hearings, made a preliminary statement at the hearings explaining the rule and responded at some length to the questioning of the rule by its opponents. It is also clear that DEP, in reaching the 20% maximum, relied on a variety of pertinent studies, including an internal report entitled "Rationale for 20% Net Fill Restriction," prepared by Mr. Whipple in July, 1983, and an internal memorandum dealing with "fill" questions, referring to a 1980 National Science Foundation publication entitled, "A Report on Flood Hazard Mitigation." Moreover, the notice of adoption of the comprehensive regulations published in the New Jersey Register on May 21, 1984, included an extensive explanation for the rule and a reference to the technical publications which supported it, including studies of the National Science Foundation and the United States Water Council. We further note that technical information both in support of and in opposition to the 20% rule was extensively discussed by hearing witnesses. For these reasons, we are satisfied that the rule was validly adopted both as a procedural and substantive matter.
Appellants further contend that the 20% rule constitutes a taking of property without due process and denies equal protection. The appellant, however, does not contest the basic proposition that development in the flood hazard area will, as a matter of fundamental hydraulic, engineering and environmental principles, increase the potential for stream flooding and will raise the water surface elevation of floods. It, therefore, does not really contest the need for some regulation. As we have pointed out, the record persuades us that the 20% net fill rule is based both on reputable, technical opinion and represents a reasonable compromise between those groups opposing any development in flood hazard areas at all and those desiring maximum development opportunities. Thus, the 20% net fill *6 rule is neither arbitrary nor factually unsupported. Accordingly, we are satisfied that the constitutional arguments have no essential merit.
Finally, appellant argues that the 20% rule constitutes a taking of property without just compensation. In determining whether the scope of regulations governing land development rises to the level of an uncompensated taking, we are guided by Matter of Egg Harbor Associates, 94 N.J. 358, 374 (1983), holding that "[t]he burden of demonstrating that a taking has occurred lies upon the party alleging that the state action is unconstitutional. Proof must be by clear and convincing evidence." We conclude that appellant has not met that burden here. See Usdin v. Environmental Protection Dep't of N.J., 173 N.J. Super. 311 (Law Div. 1980), aff'd, 179 N.J. Super. 113 (App.Div. 1981). We are further satisfied that Morris County Land, etc. v. Parsippany-Troy Hills Tp., 40 N.J. 539 (1963), is readily distinguishable. The regulation does not preclude development beyond the 20% fill restriction. It permits additional construction upon elevation of the base flood level by using, for example, pillars and pilings, and it permits compensating excavation elsewhere in the flood hazard area. See N.J.A.C. 7:13-4.7.
The second challenged provision deals with Projects of Special Concern. As we understand the challenge, appellant argues that DEP has no statutory authority to formulate criteria for Projects of Special Concern based on any consideration other than flood control. Its argument apparently is that the regulatory authority of DEP is limited by the legislative purposes expressed in the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50, et seq.
N.J.A.C. 7:13-5.1(a) states that a purpose of the category Projects of Special Concern is "[t]o help assure adequate protection of the State's aquatic life and water resources from the adverse impacts of some kinds of stream encroachments...." N.J.A.C. 7:13-5.2(c)(1) classifies as Projects of Special Concern *7 those stream encroachment projects which DEP determines would be likely to produce "[p]otential serious adverse effects on the biota of the stream, the adjoining wetlands, or on the sites where dredge spoils are to be disposed of including, but not limited to, rare or endangered species." N.J.A.C. 7:13-5.2(c)(2) and (3) classifies as Projects of Special Concern those projects having a potential for serious adverse effect on the quality of the water supply. N.J.A.C. 7:13-5.2(d) classifies as Projects of Special Concern specified encroachments on trout-associated streams.
It is the position of the appellant that there is no statutory enabling authority for these wildlife, ecological and water-pollution control concerns. We are satisfied, however, that the enabling authority is to be found first in N.J.S.A. 13:1D-1, et seq., which creates the Department of Environmental Protection and accords it broad powers of conservation and ecological control. Thus, N.J.S.A. 13:1D-9, in its introductory language, directs the Department to "* * * formulate comprehensive policies for the conservation of the natural resources of the State, the promotion of environmental protection and the prevention of pollution of the environment of the State." N.J.S.A. 13:1D-9(f) requires DEP to
Prepare, administer and supervise Statewide, regional and local programs of conservation and environmental protection, giving due regard for the ecology of the varied areas of the State and the relationship thereof to the environment, * * *.
Beyond these general provisions, we further point out that N.J.S.A. 13:1D-9(n) authorizes DEP to "[e]nforce the State air pollution, water pollution, conservation, environmental protection, waste and refuse disposal laws, rules and regulations." The Water Pollution Control Act, N.J.S.A. 58:10A-1, et seq., specifically referred to by N.J.S.A. 13:1D-9(n), specifically states as legislative findings:
* * * that pollution of the ground and surface waters of this State continues to endanger public health; to threaten fish and aquatic life, scenic and ecological values; and to limit the domestic, municipal, recreational, industrial, agricultural and other uses of water * * *. [N.J.S.A. 58:10A-2]
*8 The Legislature has, moreover, evinced its concern for these matters in the Endangered and Nongame Species Conservation Act, N.J.S.A. 23:2A-1, et seq. The broad scope of environmental concerns expressed by the Legislature in its various enactments and the totality of powers accorded by the Legislature to DEP to enable it to address those concerns persuades us that DEP has ample power to deal comprehensively in a single set of regulations with the overlapping areas of flood hazards, water pollution, and preservation of plant and animal life dependent upon the streams being encroached upon.
The final challenge made by appellant is the claim that N.J.A.C. 17:13-1.4(c), which provides for limited retroactive applicability of the comprehensive regulations, is both procedurally and substantively defective. The procedural challenge is predicated on the fact that no notice of this provision was afforded the public prior to its adoption as part of the comprehensive regulations. That failure of notice, appellant claims, contravenes N.J.A.C. 1:30-3.5, which requires notice of changes in proposed rules which are "so substantial as to effectively destroy the value of the [original] notice, and to effectively create a new proposed rule...." We are persuaded, however, that the addition of the effective-date provision here did not constitute a substantial change within the contemplation of N.J.A.C. 1:30-3.5 but was, rather, a necessary clarification in view of DEP's 90-day construction permit program. See N.J.S.A. 13:1D-29 to 34, inclusive.
Appellant's substantive challenge, an equal protection argument, is based on that provision of N.J.A.C. 7:13-1.4(c) which keys the applicability of the comprehensive regulations to a DEP declaration of completeness of the application on or after January 15, 1984. Appellant argues that two applications could have been simultaneously submitted, one declared complete before January 15, 1984 and one declared complete after. We are, however, satisfied that the declaration of completeness is dependent upon internal processing mechanisms, and we do not believe *9 that fixing a date for applicability based on the completion of a discrete step in the overall processing results either in the creation of a suspect classification or in the implication of a fundamental right.[1]See Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 39-40 (1976), app. dism. and cert. den. sub nom. Feldman v. Weymouth Township, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). It is further clear that the limited retroactivity on a uniform basis does not contravene constitutional principles. See State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 498-499 (1983).
The validity of N.J.A.C. 7:13-1.1 to 7.1, inclusive, as promulgated, is affirmed.
NOTES
[1] In recognition of potential claims of unequal treatment, the DEP amended the regulation on February 4, 1985 to accord it the discretion to approve applications submitted and accepted as complete between January 15, 1984 and May 21, 1984 even though they do not meet the new standards challenged herein. N.J.A.C. 7:13-1.4(d). See 17 N.J.R. 275 (February 4, 1985).