768 A.2d 227 (2001)
338 N.J. Super. 92
STATE of New Jersey, by the Commissioner of Transportation, Plaintiff-Respondent,
v.
TRAP ROCK INDUSTRIES, INC., a corporation of New Jersey, Defendant-Appellant, and
Ruberoid Co., a defunct corporation of New Jersey; State of New Jersey; Township of Hamilton, in the County of Mercer, a municipal corporation of New Jersey, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted February 21, 2001.
Decided March 15, 2001.
*228 Drinker Biddle & Shawley, attorneys for appellant (Vincent E. Gentile, Princeton, and Stacey P. Roth, on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Michael J. Haas, Assistant Attorney General, of counsel; Drew K. Kapur, Deputy Attorney General, on the brief).
Before Judges PRESSLER, KESTIN and CIANCIA.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant, Trap Rock Industries, Inc., appeals from a judgment entered in the Law Division on February 18, 2000, declaring that the State of New Jersey through the Commissioner of Transportation had lawfully exercised its powers of eminent domain to acquire certain property belonging to defendant; appointing condemnation commissioners; and granting possession of the property to the condemnor, subject to a stay pending appeal. In a comprehensive written opinion published at 331 N.J.Super. 258, 751 A.2d 633 (Law Div. 2000), Judge Feinberg articulated her reasons for that result. We are in substantial agreement with her decisional rationale and affirm on that basis.
The facts of the matter are set out in the trial court's opinion. 331 N.J.Super. at 262-66, 751 A.2d 633. We will not repeat them except as necessary to discuss at greater length one of the grounds for decision employed by the trial court. That ground is based upon an interpretation of N.J.S.A. 27:7A-4.1, a section of the Limited Access Highway Act, N.J.S.A. 27:7A-1 to -10. We construe that provision to confer authority on the Commissioner to condemn the subject property notwithstanding that (1) it is located about one mile from the limited access highway its acquisition was designed to serve; and (2) the condemnation proceedings were commenced two years after the Department of Transportation had originally acquired the rights of way for the highway itself.
The power of eminent domain, although inherent in sovereignty where founded in necessity, State v. Lanza, 27 *229 N.J. 516, 529, 143 A.2d 571 (1958), appeal dismissed, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959), and subject to the payment of just compensation, id. at 529-30, 143 A.2d 571, U.S. Const. amend. V. and XIV; N.J. Const. art. I, § 20, may not be exercised without a specific grant of authority from the Legislature. Lanza, supra, 27 N.J. at 530, 143 A.2d 571; see also N.J.S.A. 20:3-1 to -50 (the Eminent Domain Act of 1971 establishing the uniform procedures to be followed by all entities authorized to exercise the power); 6 Nichols on Eminent Domain § 24.07 (Sackman & Van Brunt ed., 3d ed. rev. 1989). And, it is well established that statutes granting the power are to be given a strict construction because, by definition, they derogate the private property rights so comprehensively protected by the federal and State constitutions. See State Highway Comm'r v. Maas & Waldstein Co., 83 N.J.Super. 211, 217, 199 A.2d 248 (App.Div.1964); 3A Sutherland on Statutory Construction § 67.02 (Singer ed., 5th ed.1992); 6 Nichols, supra, at § 24.07. Judge Feinberg's rationale properly applied the prevailing standards. Her determination that the Legislature had acted to confer the eminent domain power upon the Commissioner of Transportation with considerable breadth, 331 N.J.Super. at 268, 751 A.2d 633, is not at war with the general policies and standards which aid in determining whether that power has been granted. See, e.g., Maas & Waldstein, supra, 83 N.J.Super. at 217, 199 A.2d 248 ("The Highway Act should be liberally construed to reflect its purpose, the building of state highways."); State Highway Comm'r v. Totowa Lumber & Supply Co., 96 N.J.Super. 115, 119, 232 A.2d 655 (App. Div.1967) ("We have adopted the liberal view as to the meaning of `public use.'"); see also 6 Nichols, supra, at § 24.07.
We agree with the trial court's disposition of defendant's argument that environmental mitigation is not expressly within in the ambit of the purposes stated in N.J.S.A. 27:7A-3(a) for which the power to condemn may be exercised in the construction of limited access highways. There is a solid basis in the reasons articulated for determining that, in every practical sense, the property at issue here was needed for "the traveled way", ibid., for without that property's availability for mitigation purposes, the conditions of the environmental permit would not have been met and the highway could not have been constructed.
We also subscribe to Judge Feinberg's characterization of the terms of N.J.S.A. 27:7A-4.1 as "appear[ing] to actually expand the Commissioner's powers by allowing the Commissioner to take more property for purposes of limited access highways than is necessary." 331 N.J.Super. at 273-74, 751 A.2d 633. Because of an emphasis in some of defendant's arguments, that is the concept worth enlarging. Defendant has contended that the condemnation was invalid because (1) the property used for mitigation is far from the habitat that was destroyed by the highway's construction, (2) defendant is being penalized because the acreage taken for the required mitigation was twice the amount of the actual acreage that was destroyed, and (3) an innocent property owner has no involvement in the mitigation decision and no opportunity to challenge the assumptions on which the mitigation requirement was based.
N.J.S.A. 27:7A-4.1 states:
In connection with the acquisition of property or property rights for any limited access highway or portion thereof, the commissioner, with respect to limited access highways under his jurisdiction, and the governing body of a county, with respect to limited access highways under its jurisdiction, may, in his or its discretion, acquire by gift, devise, purchase or condemnation, an entire lot, block or tract of land, if, by so doing, the interests of the public will be best served even though said entire lot, block or tract is not needed for transportation purposes, but only if the portion not needed for transportation *230 purposes is landlocked or is so situated that the cost to the State will be practically equivalent to the total value of the whole parcel of land. For purposes of this section, "transportation purposes" means all uses of property which are, in the judgment of the commissioner, useful or beneficial in promoting an efficient, integrated, and balanced transportation system.
We note specifically the clause stating that "the commissioner, with respect to limited access highways under his jurisdiction... may, in his ... discretion, acquire by ... condemnation, an entire lot, block or tract of land[.]" It is undisputed here that Route 29 is a limited access highway and that the Commissioner used the condemnation power to acquire the whole of appellant's tract in question.
The statute also states that the Commissioner may condemn the entire lot "if, by so doing, the interests of the public will be best served even though said entire lot, block or tract is not needed for transportation purposes[.]" It is beyond question that environmental mitigation serves the interests of the public.
In order to construct Route 29, the Department submitted applications for development permits to the Department of Environmental Protection (DEP) pursuant to the Waterfront Development Act (WDA), N.J.S.A. 12:5-1 to -11, and to the United States Army Corps of Engineers (COE). Both applications were granted with a 2:1 replacement requirement by way of environmental mitigation. We recently dismissed an appeal from the issuance of the DEP permit in an unpublished opinion, In re Waterfront Dev. Permit No. 1111-96-0003.2 WFD, Issued to N.J. Department of Transp. by N.J. Dep't of Envtl. Prot., No. A-1249-97 (App.Div.2000). Although the authority of the COE to require mitigation is beyond the scope of our authority to review, we must evaluate the appropriateness of DEP's like requirement.
Even though there is no specific mention of environmental mitigation or other environmental concerns in the WDA statutory scheme, that Act has been administratively interpreted as having the purpose "to promote the development and revitalization as well as to safeguard the port facilities and waterfront resources for the public's overall economic advantage." Op. Att'y Gen. No. 6 (1980). The Supreme Court, "recogniz[ing] that environmental concerns are inextricably linked with the regulation of commerce[,]" has endorsed the view, inter alia, that "environmental damage to our coastal areas is detrimental to the state's four-billion-dollar-per-year tourist industry." Last Chance Dev. P'ship v. Kean, 119 N.J. 425, 435, 575 A.2d 427 (1990) (challenging DEP's regulations adopted pursuant to the WDA). And, the Court foresaw the promulgation of regulations "tying the development of adjacent uplands to potential damage to the waterfront and water resources of the State[.]" Id. at 435-36, 575 A.2d 427.
Indeed, DEP is entitled and expected to use more than one statutory scheme when it promulgates "a single set of regulations with the overlapping areas of flood hazards, water pollution, and preservation of plant and animal life[.]" Society for Envtl. Econ. Dev. v. New Jersey Dep't of Envtl. Prot., 208 N.J.Super. 1, 8, 504 A.2d 1180 (App.Div.1985). Its regulations pertaining to environmental mitigation were promulgated in this way. That is, DEP used the WDA and other environmental acts to promulgate the Coastal Permit Program Rules, N.J.A.C. 7:7-1.1 to -9.9, and the Rules on Coastal Zone Management, N.J.A.C. 7:7E-1.1 to -8.21. See N.J.S.A. 12:5-3 (requiring all plans for the development of any waterfront property on navigable water to be approved by DEP). The requirement for the mitigation involved in this case is found in N.J.A.C. 7:7E-1.6(a),[*] which states in part:

*231 Mitigation shall be selectively considered on a case-by-case basis as compensation for the loss or degradation of a particular natural resource. In general, mitigation should be similar in type and location to the resource disturbed, destroyed, that is, replacement in kind within the same watershed. The Program will, however, consider proposals for mitigation that differ in type and/or location from the disturbed or destroyed resource provided the mitigation would provide a major contribution to meeting the Basic Location Policies (N.J.A.C. 7:7E-1.5(b)1).
The declared rationale for this regulation is stated in N.J.A.C. 7:7E-1.6(b):
This rule is intended to conserve those physical and biological values described under applicable Special Area rules, while allowing development consistent with acceptability criteria. Use of this mitigation rule will result in real gain, or no net loss of habitat productivity or resource value.
Thus, there is ample basis for concluding, as we have, not only that environmental mitigation serves the public interest, but also that the agency charged with its implementation, DEP, has, as a general matter, acted appropriately and adequately to promote it.
N.J.S.A. 27:7A-4.1 also provides that the Commissioner may condemn the entire lot at issue "if, by so doing, the interests of the public will be best served even though said entire lot, block or tract is not needed for transportation purposes[.]" Defendant asserts that the purposes of environmental mitigation are not equivalent to transportation purposes. Yet, the statute defines "transportation purposes" as "all uses of property which are, in the judgment of the commissioner, useful or beneficial in promoting an efficient, integrated, and balanced transportation system." Although mitigation is strictly environmental in its nature, the highway could not have been constructed without an environmental mitigation. Therefore, the property at issue was realistically needed for transportation purposes, and the choice to acquire it cannot be seen to have been unreasonable or so unrelated to legitimate objectives as to require invalidation.
Finally, the statute states that the Commissioner may acquire the entire lot, block or tract of land "[i]n connection with the acquisition of property or property rights for any limited access highway or portion thereof[.]" We take defendant's argument in this regard to suggest that this requirement has not been met because the Commissioner did not acquire the property from the same owners of the original rights-of-way for the project, and because the Department moved to acquire the subject property long after it had acquired those original rights-of-way from other owners.
Based on the legislative history of N.J.S.A. 27:7A-4.1 and a fair interpretation of its plain language, we conclude that the original rights-of-way are sufficiently related to the instant parcel in acquisitional terms to satisfy statutory requirements. In this connection, we reject defendant's assertion that N.J.S.A. 27:7A-4.1, in its current form, applies only to the uneconomic remnants of parcels taken by the Commissioner. Although that might have been the statute's design when it was first enacted in 1952, the Legislature in 1989 broadened the condemnation powers previously granted to the Commissioner.
The Legislature first enacted N.J.S.A. 27:7A-4.1 in 1952 as part of the Limited Access Highway Act, L. 1952, c. 21, § 1, granting the Commissioner the power to condemn the remnants of parcels that had been condemned for highway purposes:
In connection with the acquisition of property or property rights for any freeway or parkway or portion thereof, the State Highway Commissioner may, in his discretion, acquire by gift, devise, purchase or condemnation, an entire lot, block or tract of land, if, by so doing, the interests of the public will be best *232 served even though said entire lot, block or tract is not needed for the right-of-way proper but only if the portion outside the normal right-of-way is landlocked or is so situated that the cost of acquisition to the State will be practically equivalent to the total value of the whole parcel of land; provided, however, that the State Highway Commissioner shall not have the power to acquire by the exercise of the right of eminent domain for any of the purposes of this act any property or property rights owned or used by any public utility as defined in section 48:2-13 of the Revised Statutes. (emphasis supplied)
These terms are almost identical to a provision in N.J.S.A. 27:7-22.6 which was enacted in 1967, and which currently controls the Commissioner's power to condemn uneconomic remnants of land. N.J.S.A. 27:7-22.6 is designated as "An Act to enable the Commissioner of Transportation to acquire uneconomic remnants of lands and rights therein and supplementing chapter 7 of Title 27 of the Revised Statutes." L. 1967, c. 55.
In two cases applying N.J.S.A. 27:7A-4.1 in its original form, we held that the Commissioner could have used that statute to condemn the non-economic remnants of a parcel of land in order to give access to neighboring landlocked properties. In State Highway Comm'r v. Buck, 94 N.J.Super. 84, 86-87, 226 A.2d 840 (App. Div.), certif. denied, 49 N.J. 359, 230 A.2d 393 (1967), appeal dismissed, 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968), the Commissioner condemned an entire parcel so that a neighboring property would have access to the highway and not be landlocked, rather than leaving a borderline strip too small to be in compliance with the existing residential zoning ordinance. We relied on N.J.S.A. 27:7A-4.1 to affirm the Commissioner's action, concluding that "[r]ather than leave a land segment useless under local zoning and subject the State to payment of damages incident to unacquired remainder land, the Commissioner made a sound and sensible decision to condemn the entire tract at a practically equivalent cost, especially when in so doing he preserved accessibility to adjoining lands which have an apparent potential for development." Id. at 88, 226 A.2d 840. The court declared that "the controlling question [was] whether the paramount reason for taking land to which objection is made is in the public interest." Ibid.

In State Highway Comm'r v. Davis, 87 N.J.Super. 377, 378, 209 A.2d 633 (App. Div.), certif. denied, 46 N.J. 135, 215 A.2d 30 (1965), the Commissioner acquired land from the defendant to build a highway. Thereafter, the Commissioner acquired another parcel of the defendant's property in order to build an access road to the landlocked property of defendant's neighbors. Id. at 378-79, 209 A.2d 633. The only issue in that case was whether the Commissioner's later acquisition by condemnation to free landlocked properties was for a proper public use as distinguished from an impermissible private use. Id. at 378, 209 A.2d 633. We validated the acquisition.
In 1989, the Legislature amended N.J.S.A. 27:7A-4.1 in several particulars, including deleting the phrase "even though said entire lot, block or tract is not needed for the right-of-way proper ..." and substituting the phrase "even though said entire lot, block or tract is not needed for transportation purposes." L. 1989, c. 32, § 17. That amendment was part of the Legislature's sweeping changes to the Limited Access Highway Act, broadening the Commissioner's power of condemnation.
The legislative history for the 1989 amendments does not specifically address the Commissioner's condemnation powers or, in particular, the changes to N.J.S.A. 27:7A-4.1. Nevertheless, it is clear that the Legislature on the whole intended to broaden the Commissioner's powers to construct and designate limited access highways and to limit, improve or exclude access to state highways.
*233 Thus, based on the comprehensive amendments of the Limited Access Highway Act in 1989, on the legislative history, and on the plain language of the current version of N.J.S.A. 27:7A-4.1, we conclude, in the light of the Commissioner's broadened powers, that there is no express or implied requirement in the statute that the Commissioner acquire the properties involved from the same owner or at the same time. Although not pertinent to the actual holding, Davis, supra, also concerned the acquisition of two separate parcels at different times. See 87 N.J.Super. at 378-79, 209 A.2d 633. There, the State, for construction of Interstate Highway 287, had acquired a parcel owned by the defendant. Sometime thereafter, the State proposed to acquire by condemnation "another portion of defendant's property... in conjunction with lands acquired from other owners, to build a roadway" for access to other properties that had become landlocked. Ibid. We suggested in dictum that the State could have used N.J.S.A. 27:7A-4.1, implying that that statute, even then, in 1965, authorized the acquisition of separate properties and not only remnants. Id. at 380-81, 209 A.2d 633.
Moreover and more generally, public bodies have traditionally been given discretion in determining the quantity of land to be taken, its location and the time of taking. Burnett v. Abbott, supra, 14 N.J. at 294, 102 A.2d 16; accord New Jersey Highway Auth. v. Currie, 35 N.J.Super. 525, 114 A.2d 587 (App.Div. 1955). The exercise of that discretion will not be upset by the courts in the absence of an affirmative showing of fraud, bad faith or manifest abuse. City of Trenton v. Lenzner, 16 N.J. 465, 473, 109 A.2d 409 (1954), cert. denied, 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955).
Among the other reasons to reject the arguments defendant has offered which we have dealt with as additional bases for affirming the trial court's decision, we note that N.J.A.C. 7:7E-1.6(a) authorizes environmental mitigation to be considered on "a case-by-case basis" and provides that the acquisition need not be similar in type and location to the resource disturbed. It also provides that affected individuals are entitled to bring challenges to various types of permits issued by DEP.
Hence, we conclude for reasons in addition to those articulated by the trial court for validating the condemnation, that the Commissioner had the authority to condemn appellant's property under the Limited Access Highway Act, in particular N.J.S.A. 27:7A-4.1.
Affirmed.
NOTES
[*] The mitigation requirements of N.J.A.C. 7:7A-14.2, cited by defendant, apply to mitigation for freshwater wetland permits, see N.J.A.C. 7:7A-1.1, clearly not implicated here.