**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2660-15T3
                A-4036-15T3

MINKE FAMILY TRUST,

    Plaintiff-Appellant,

v.

TOWNSHIP OF LONG BEACH,
a Municipal Corporation of
the State of New Jersey,

    Defendant-Respondent.

_____

TOWNSHIP OF LONG BEACH,
a Municipal Corporation of
the State of New Jersey,

    Plaintiff-Respondent,

v.

MINKE FAMILY TRUST,

    Defendant-Appellant,

and

LISA TOMASI, LYDIA ZINZI,
JEAN VELTEN and TOWNSHIP OF
LONG BEACH,

    Defendants.

_____

Argued October 17, 2017 — Decided August 20, 2018

Before Judges Yannotti, Leone, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-3033-14 and L-0585-16.

John H. Buonocore, Jr. argued the cause for appellant (McKirdy Riskin Olson & Della Pelle, attorneys; John H. Buonocore, Jr. and L. Jeffrey Lewis, on the briefs).

Paul V. Fernicola argued the cause for respondent (Paul V. Fernicola & Associates, LLC, attorneys; Paul V. Fernicola, on the briefs).

PER CURIAM

These appeals concern the selection and condemnation of an easement for public beach access on property owned by the Minke Family Trust (Minke) in the Township of Long Beach (Township). In Docket No. A-2660-15, Minke appeals a February 18, 2016 order adversely resolving on summary judgment its action in lieu of prerogative writs against the Township. In Docket No. A-4036-15, Minke appeals an April 29, 2016 order for judgment in the condemnation action brought by the Township. We consolidate those back-to-back appeals for purposes of our opinion. We affirm.

The following undisputed facts appear in the trial court's opinion and in the documentary evidence. Minke owns a beachfront property on Block 20.107, Lot 4, in the Loveladies section of the Township.

The Township was part of an on-going shoreline protection project (Project) undertaken by the New Jersey Department of Environmental Protection (NJDEP) and the United States Army Corps of Engineers (ACOE) to construct storm protection measures, such as dunes and berms, to guard against coastal storm damage. Because the Project is federally-funded, it is conditioned on compliance with ACOE regulations as well as NJDEP regulations.

The ACOE's engineering regulations conditioned its participation in the Project on the "provision of reasonable public access rights-of-way" to the beach, with an appendix providing: "Reasonable access is access approximately every one-half mile or less." U.S. Army Corps of Engineers, ER 1105-2-100, Planning Guidance Notebook ch. 3, § 4(b)(5)(c) & App. E, § 24(d)(3) (2000) (Guidance). The Guidance's appendix also provided: "Lack of sufficient parking facilities for the general public (including nonresident users) located reasonably near and accessible to the project beaches may constitute a restriction on public access and

use, thereby precluding eligibility for [ACOE] participation." Id. at App. E, § 24(d)(2); see id. at ch. 3, § 4(b)(5)(b).[1] A NJDEP regulation (originally N.J.A.C. 7:7E-8.11 but recodified as N.J.A.C. 7:7-16.9) provided that "access shall be provided in accordance with the [Guidance ch. 3, § 4]," and incorporated the above-quoted provisions from the Guidance's appendix. N.J.A.C. 7:7-16.9(p). The ACOE will not open bids to construct a project until the State certifies it has acquired the easements necessary to meet these requirements.

The Township did not have public beach access every half mile, and thus had to obtain public access easements in at least four locations. In particular, there was no public beach access in the approximately 3600-foot section between Block 20.53 and Block 20.117. The Township retained Frank J. Little, Jr., P.E., P.P. to perform the necessary planning and surveying.

In 2003, Little prepared maps proposing the public access easement for that section be located between Block 20.93 and Block 20.95. The 2003 maps were presented for public review and comment in October 2006. However, no easement was obtained, and no

---

[1] Similar standards had been set forth in U.S. Army Corps of Engineers, ER 1165-2-163, Federal Participation in Shore Protection ¶ 6(h)(2)-(3) (1989).

construction under the Project occurred in that area.

In October 2012, Hurricane Sandy struck. Where the ACOE had completed dunes and beach replenishment, the homeowners were largely protected; where it had not, the homeowners suffered extensive damage. The pre-existing beach and dunes in the Loveladies section were insufficient to protect the homeowners.

In January 2013, Congress allocated $ 3.461 billion to the ACOE "for necessary expenses related to the consequences of Hurricane Sandy," directing that $2.902 billion "shall be used to reduce future flood risk." Disaster Relief Appropriations Act & Sandy Recovery Improvement Act of 2013, 113 P.L. 2, 127 Stat. 4 (Jan. 29, 2013). In September 2013, noting the refusal of some private landowners to grant easements to construct the needed "flood hazard risk reduction measures including protective sand dunes, berms, and engineered beaches," Governor Christie signed an executive order creating an Office of Flood Hazard Risk Reduction Measures in the NJDEP to "lead and coordinate the efforts of the [NJDEP] to acquire the necessary interests in real property." Exec. Order 140 at 1, 3 (Sept. 25, 2013).

In February 2014, the NJDEP's Christopher Constantino emailed Little asking "about the status of the public access plan for the areas in [the Township] that did not meet the standards." On

March 4, 2014, the ACOE's Keith Watson emailed that it was "critical that we get this for [the Township as] it is delaying approval of our HSLRR [Hurricane Sandy Limited Reevaluation Report] & PPA [Project Partnership Agreement]." Constantino asked for updates on March 10, 2014. On March 13, 2014, the Township sent a letter to the NJDEP proposing the public access be entirely within Block 20.93, and attached maps.

The ACOE issued its HSLRR on May 16, 2014, and approved the Real Estate Plan (REP) annexed to the HSLRR on June 16, 2014. Both stated that "[b]etween Stations 145+00 and 155+80 [on an ACOE survey map] . . . there is ample parking but an additional beach access must be provided." Minke's engineer certified that Station 145+00 is between Block 20.103 and Block 20.104, and that Station 155+80 is between Block 20.82 and Block 20.83.

In July 2014, the ACOE and the NJDEP entered into a PPA, stating that the Project was described in a 2000 ACOE report as modified by the HSLRR, and that the NJDEP would provide "necessary access roads, parking areas, and other associated public use facilities" as described in the HSLRR. On August 1, 2014, the ACOE issued a notice to proceed "with acquisition of the necessary real estate interests" for the Project "in accordance with the [PPA]" before the bidding of contracts, scheduled for October 7,

2014.

On August 19, 2014, Little issued an updated map moving the proposed public access easement from Block 20.93 to Block 20.107. Block 20.107 already had an existing private beach access easement from Long Beach Boulevard which crossed and was used by three properties on Lots 1, 2, and 3 and Minke's property on Lot 4. On September 10, 2014, Little issued an updated map which again proposed the public access easement be at Block 20.107.

On September 12, 2014, the Township passed on first reading Ordinance 14-32 (Ordinance), which authorized the Township to acquire through eminent domain four public beach access easements, including on Block 20.107. On September 26, 2014, over Minke's objection, the Township adopted the Ordinance. On October 6, 2014, the Township passed Resolution 14-1006.01 (Resolution), which proposed on an emergent basis under N.J.S.A. App. A:9-51.5 to take possession of public access easements, including on Block 20.107.

On October 22, 2014, Minke filed in the Law Division an action in lieu of prerogative writs, challenging the Ordinance in counts I and II and the Resolution in count III. In a February 13, 2015 opinion and March 6, 2015 order, a judge found the Resolution invalid and granted Minke summary judgment on count III. The

judge denied the Township's motion to dismiss counts I and II.

The Township later moved for summary judgment on counts I and II, and Minke filed a cross-motion for summary judgment. After hearing argument, the trial court granted the Township's motion and denied Minke's motion in a December 30, 2015 opinion and February 18, 2016 order. Minke appeals that order in Docket No. A-2660-15.

On February 29, 2016, the Township filed a complaint and order to show cause in the Law Division, seeking to acquire by eminent domain public-use easements on Block 20.107. Minke filed an answer. On April 29, 2016, the trial court held a hearing and issued an order for judgment, finding the Township had duly exercised its power of eminent domain, and appointing commissioners to determine the compensation. Minke appeals that order in Docket No. A-4036-15.

## II.

We first consider the summary judgment rulings in Docket No. A-2660-25. Minke contends the trial court should have granted its motion for summary judgment, and denied the Township's motion for summary judgment.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file,

8 A-2660-15T3

together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[T]he court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Id. at 535 (citation omitted).

"Our review of a summary judgment ruling is de novo." Conley v. Guerrero, 228 N.J. 339, 346 (2017). We must hew to that standard of review.

A.

Minke initially raises evidentiary and discovery issues. "When, as in this case, a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (citation omitted).

"Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

In response to the Township's summary judgment motion and in support of Minke's cross-motion for summary judgment, Minke's Counterstatement of Material Facts asserted the ACOE and the NJDEP never approved Block 20.107 as the access point. With its reply, the Township supplied contrary certifications it had just obtained from the NJDEP's Constantino and the ACOE's Watson. Minke challenges the admissibility of those certifications.

Minke notes that Watson and Constantino were not listed in the pretrial order. However, the pretrial order listed only the "[e]xpert witness" (Little), did not address fact witnesses, and did not state it was precluding any trial witnesses. Moreover, the pretrial order did not limit the persons who could provide certifications for summary judgment purposes.

The Township could submit affidavits or certifications in response to Minke's counterstatement in support of Minke's cross-motion for summary judgment. R. 4:46-1, 4:46-5(a). Minke claims it never had an opportunity to depose Constantino and Watson. However, the February 13, 2015 order gave each party the opportunity for discovery in the months before the December 2015

summary judgment proceedings. Minke knew Constantino and Watson represented their agencies on the Project, and could have deposed them.

Minke also argues discovery was not complete, because the Township asserted documents in Little's file were privileged but failed to produce a promised privilege log. However, Minke did not file a motion to compel discovery, and instead filed a cross-motion for summary judgment. "When both parties to an action 'move[] for summary judgment, one may fairly assume that the evidence was all there and the matter was ripe for adjudication.'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 450 (2007) (citation omitted).

In any event, "[a] motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to '"demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action."'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citations omitted).

Minke originally sought the privileged documents to prove Little moved the access point to Block 20.107 in retaliation for Minke's refusal to grant a separate beach easement for the dune and beach construction. However, discovery showed that Little in

11

2014 selected as beach access sites several properties whose owners had agreed to beach easements. Moreover, in the same August 19, 2014 revision where he moved the proposed public access easement to Block 20.107, he moved another proposed public access easement from a property whose owner had not agreed to a beach easement to a property whose owner had agreed to a beach easement. As a result, Minke expressly abandoned any retaliation claim, making those documents "irrelevant." Id. at 563.

### B.

Minke claims Little's decision to propose a public access easement at Block 20.107 violated the ACOE's Guidance and the NJDEP's regulation. However, the proposed public access at Block 20.107 was 1150 feet north of an existing access point and 2500 feet south of an existing access point, and thus within one-half mile (2640 feet) of the existing access points in either direction. "Reasonable access is access approximately every one-half mile or less." Guidance, App. E, § 24(d)(3); N.J.A.C. 7:7-16.9(p).

Minke quotes the Guidance that parking for the public must be "reasonably nearby, and with reasonable public access to" and "within reasonable walking distance of the beach." Guidance, App. E, § 24(d)(2). However, Little certified, and testified at his deposition, that the amount of parking reasonably near Block 20.107

met this requirement. Minke presented no contrary evidence.

Minke's August 2015 planning report asserted that "Block 20.93 is superior to Block 20.107" because Block 20.93 was the closest access point to 243 parking spaces versus 157 parking spaces for Block 20.107. However, Minke's report never asserted Block 20.107 lacked "sufficient parking" under the Guidance, App. E, § 24(d)(2), or N.J.A.C. 7:7-16.9(p).

Minke argues it was unauthorized to propose Block 20.107 instead of Block 20.93. However, the NJDEP's Constantino certified that N.J.A.C. 7:7-16.9 "generally affords discretion to coastal municipalities in determining where public accessways are located," and that "each municipality had the discretion to place the public access easements where it saw fit, provided the ACOE's not less than half-mile public access requirement to the beach was met." ACOE's Watson certified that "[t]he specific locations for the access points are within the discretion of the Township and the [NJDEP]." Minke presented no contrary evidence.

In any event, nothing in the Guidance or N.J.A.C. 7:17-16.9(p) dictates where the public access must be, as long as it is "one-half mile or less" from the access points on either side, and has sufficient parking. Guidance, App. E, § 24(d)(2)-(3); N.J.A.C. 7:7-16.9(p). Neither provision prevents a municipality from

13                                              A-2660-15T3

changing proposed access sites so long as the new site meets those criteria, as here.

Minke claims proposing Block 20.107 rather than 20.93 violated "the Project instruments," namely the HSLRR and REP. However, neither document mentioned Block 20.93.

Minke cites the HSLRR's statement that the NJDEP "has developed a public access and parking plan that meets all Federal requirements for public access points and parking." However, Minke has not cited any NJDEP plan that listed Block 20.93. Moreover, both the HSLRR and the REP indicated the NJDEP "has been and continues to acquire the rights necessary meet both parking and access requirements for the areas in question," recognizing the acquisition of necessary public access easements was an ongoing process. It is undisputed no acquisition process had commenced for an easement on Block 20.93 before Block 20.107 was selected.

Minke notes the Township's March 13, 2014 letter proposed Block 20.93. However, that letter was sent to NJDEP. Even assuming it was forwarded to the ACOE, Minke has not shown the ACOE ever specified the public access had to be at Block 20.93.

Minke focuses on the statement in the HSLRR and REP that "an additional beach access must be provided" between "Stations 145+00 and 155+80," in other words between Block 20.82/20.83 and Block

14

20.103/20.104. However, public access at Block 20.107 satisfied the half-mile requirement of the Guidance and N.J.A.C. 7:7-16.9(p), and removed the need to have public access between those stations. Nothing in the HSLRR or REP precluded such a solution.

Further, Constantino certified such public access "plans are often revised by the municipality upon receipt of additional information regarding the impacted properties." Watson certified that "if necessary, the [REP] . . . may be modified to account for any changes to public access made by the Township and the [NJDEP] that are otherwise compliant with the Engineer Regulation." Again, Minke presented no evidence to the contrary.

Minke argues there was no evidence the plans were modified or that Block 20.107 was ever approved by the NJDEP or the ACOE. However, the REP stated that "parking and access requirements" "will be re-evaluated on project authorization to ensure adherence to federal guidelines." Moreover, Constantino certified:

> [T]he Township presented an access plan that was consistent with both federal and state requirements, which included an accessway across [Minke's] property in order to allow public access to the beach. As a result of the access plan presented by the Township, the Project was approved by the State and the ACOE, with construction of the Project currently underway along the entirety of Long Beach Island.

15                                                    A-2660-15T3

Minke questions whether Constantino, an Environmental Specialist 3, had the authority to alter the HSLRR or the REP. However, those documents did not require Block 20.93. Moreover, Constantino simply certified to his personal knowledge that the Project was approved based on the Township's access plan, which included public access at Minke's property on Block 20.107. Minke presented no contrary evidence.

Minke complains about Constantino's additional statements that it is "the position [of] the State that the Township's access plan complies with State and ACOE requirements and is not arbitrary," and that summary judgment should be granted to the Township and denied to Minke. We agree those were not statements of fact but of a litigative position of the NJDEP, which was no longer a party, by a person who was not its lawyer. Thus, we disregard that statement. Nonetheless, the remainder of Constantino's certification and the other evidence showed that the Township's selection of Block 20.107 complied with the requirements of the ACOE and the NJDEP.

We also reject Minke's argument that the Ordinance was contrary to the Governor's executive order, which provided that no municipality shall enact any ordinance "which will or might in any way conflict with any of the provisions of this Order, or

which will in any way interfere with or impede its achievement." Exec. Order No. 140 at 4. The Ordinance cited the executive order, and sought to achieve its goal of "acquir[ing] the necessary interests in real property to undertake Flood Hazard Risk Reduction Measures." Id. at 3.

Thus, as the trial court observed, the proposed public access easement on Block 20.107 met the federal and state requirements.

## C.

Minke argues Block 20.93 was closer to the midpoint between the existing public access points, was closer to more parking and households, and would have been an easier site on which to build public beach access than Block 20.107. Thus, Minke argues Block 20.93 was superior to Block 20.107 as a public access location. However, the alleged superiority of one location over another is not an issue for the courts.

Our "'Legislature has delegated broad authority to municipalities to acquire private property by eminent domain for public uses.'" Twp. of Readington v. Solberg Aviation Co., 409 N.J. Super. 282, 310 (App. Div. 2009) (citation omitted). "For that reason, 'New Jersey courts traditionally have granted wide latitude to condemning authorities in determining what property may be condemned for "public use."'" Ibid. (quoting Twp. of W.

17                                        A-2660-15T3

Orange v. 769 Assocs., 172 N.J. 564, 572 (2002)). "[T]he location is a matter within the discretion of the condemnor." Tex. E. Transmission Corp. v. Wildlife Press., 48 N.J. 261, 269 (1966); accord State v. Trap Rock Indus., 338 N.J. Super. 92, 102 (App. Div. 2001). "The Township's decision is entitled to deference and [it] is under no affirmative obligation to show that the proposed [location] is superior to" an alternative location. 769 Assocs., 172 N.J. at 579. That another location was a better or "viable alternative is of no moment." See ibid.

Moreover, the Township presented evidence that Block 20.107 was superior in other ways. Little certified and testified that, after visiting the sites, he chose Block 20.107 over Block 20.93 as the public access easement for several reasons. First, "the Minke property had a well-defined entrance gate and separate walkway to the beach." By contrast, adding a pedestrian "walkway would interfere with the use of the driveway[s] located between [Blocks] 20.93 and 20.95. Second, Minke's "landscaping physically separated the property's amenities from the easement area." Third, there were only four adjacent properties using "the existing private access easement" at Block 20.107 versus ten adjacent properties using the existing private access easement at Block 20.93/20.95. Thus, there would be fewer properties involved in

18                                              A-2660-15T3

the acquisition of the public access easement.

Minke argues Little's reasons were incorrect, controverted, and raised disputed issues of fact and credibility. Minke's arguments, and those disputes, are not material. "[A] non-moving party cannot defeat a motion for summary judgment merely by pointing to <u>any</u> fact in dispute." <u>Brill</u>, 142 N.J. at 529. "[A] court should deny a summary judgment motion <u>only</u> where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" <u>Ibid.</u> (quoting <u>R.</u> 4:46-2). "[I]f the opposing party" shows disputes concerning "only facts which are immaterial . . . he will not be heard to complain if the court grants summary judgment." <u>Ibid.</u> (quoting <u>Judson v. Peoples Bank & Tr. Co.</u>, 17 N.J. 67, 75 (1954)).

The disputes are immaterial because, as set forth below, the courts review an eminent domain ordinance only for "'fraud, bad faith or manifest abuse.'" <u>769 Assocs.</u>, 172 N.J. at 571 (quoting <u>City of Trenton v. Lenzner</u>, 16 N.J. 465, 473 (1954)). Thus, a condemnor's "exercise of [its] discretion [to determine the location] will not be upset by the courts in the absence of an affirmative showing of fraud, bad faith or manifest abuse." <u>Trap Rock Indus.</u>, 338 N.J. Super. at 102 (citing <u>Lenzner</u>, 16 N.J. at 473); <u>see</u> <u>Passaic Junior Chamber of Commerce v. Hous. Auth. of</u>

<u>Passaic</u>, 45 N.J. Super. 381, 394 (App. Div. 1957). As that standard was not met by any of the disputes Minke cites, they were "irrelevant." See <u>Brill</u>, 142 N.J. at 543.

The trial court cited Little's certification, and stated "that the Township's decision to relocate the access easement to [Minke's] property is supported by credible expert opinion." As Minke notes, it is not the role of a court to determine credibility on summary judgment. See <u>id.</u> at 540. Nonetheless, as the trial court immediately and correctly noted, "the Township is not obligated to show that an access easement located on plaintiff's property is superior to any alternative location." Therefore, it is irrelevant to our de novo review whether Little was correct that Block 20.107 was the superior location.

### D.

Minke argues the trial court erred in employing a "bad faith" or "improper motive" standard. However, "[i]t is well-established that a reviewing court will not upset a municipality's decision to use its eminent domain power 'in the absence of an affirmative showing of fraud, bad faith or manifest abuse.'" <u>769 Assocs.</u>, 172 N.J. at 571 (quoting <u>Lenzner</u>, 16 N.J. at 473); <u>accord</u> <u>Solberg Aviation</u>, 409 N.J. Super. at 310. This standard is applicable even if the ordinance adopts a location different than the location

suggested by an earlier study. <u>769 Assocs.</u>, 172 N.J. at 578-79.

Thus, the trial court properly observed that "[a]bsent an impermissible motive, the decision of where to locate the access easement" was left to "the sound discretion of the taking authority," that Minke "failed to present sufficient evidence to prove the Township designated the access easement on [Minke's] property in retaliation or bad faith," and that "[m]ere speculation about motives in relocating the public beach access easement is not sufficient to defeat a motion for summary judgment."

"'When a municipality adopts an ordinance in the exercise of its power of eminent domain, that determination is usually presumed valid and entitled to great deference.'" <u>Twp. of W. Orange v. 769 Assocs.</u>, 341 N.J. Super. 580, 588 (App. Div. 2001) (citation omitted), <u>rev'd on other grounds</u>, 172 N.J. 564, 570, 579 (2002); <u>see 62-64 Main St., L.L.C. v. Mayor of City of Hackensack</u>, 221 N.J. 129, 157 (2015). Minke failed to overcome that presumption of validity, or to show "arbitrary or capricious action," <u>Tex. E. Transmission Corp.</u>, 48 N.J. at 269, let alone a "'manifest abuse of discretion.'" <u>769 Assocs.</u>, 172 N.J. at 579 (citation omitted); <u>see id.</u> at 578 ("we have never held that the standard is other than the manifest abuse of discretion test").

III.

We next address Minke's challenge in Docket No. A-4036-15 to the order for judgment in the condemnation action. "An action in condemnation shall be brought in the Superior Court in a summary manner pursuant to R. 4:67." R. 4:73-1. In a summary action, if "the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final judgment thereon." R. 4:67-5. "We review the court's findings as if they were made after a summary judgment motion," In re Estate of Baker, 297 N.J. Super. 203, 207 (App. Div. 1997), except that "a party is not entitled to favorable inferences such as are afforded to the respondent on a summary judgment motion," Grabowsky v. Twp. of Montclair, 221 N.J. 536, 549 (2015).

Minke first argues the trial court erred in finding the Township was authorized to condemn Minke's property, "for the reasons stated in its prerogative writs appeal." Specifically, Minke argues that the Ordinance was invalid and thus the condemnation based on the Ordinance was invalid. We reject these arguments for the same reasons we upheld the Ordinance and rejected Minke's appeal in Docket No. A-2660-15.

Second, Minke contends the Township's complaint failed to

describe adequately the legal rights to be acquired. Rule 4:73-1 provides that in an action in condemnation:

> [t]he complaint shall include a statement showing the amount of compensation offered by the condemnor and a reasonable disclosure of the manner in which the amount has been calculated. Unless the court for good cause orders otherwise, reasonable disclosure by the condemnor shall include furnishing the condemnee with the map and a description of land to be acquired and identity of improvements to be acquired, if any[.]

N.J.S.A. 20:3-6 provides that

> no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired[.]

N.J.S.A. 20:3-17(e) provides the declaration of taking shall include "a statement of the estate or interest therein being condemned."

The Township's verified complaint stated in pertinent part as follows. "[I]t is necessary to acquire for public use easements in the land and premises, identified as Block 20.107, Lot 4, in the Township," owned by Minke. The Township was "acquiring two (2) easements over the Property: the oceanfront Perpetual Storm

23

Damage Reduction Easement required for the shore protection features as well as a perpendicular Permanent Pedestrian Access Easement as required by the [ACOE/NJDEP] Project." Those two easements were "more particularly described" on the attached exhibits, which included a detailed map and a through description of metes and bounds for the "Storm Damage Reduction Easement" and for the "Variable Width Access Easement." The maps and metes and bounds described in detail the location, length, width, shape, and area of each easement.

The Township's complaint also proposed just compensation of $27,000 for the Permanent Pedestrian Access Easement, and $3000 for the Storm Damage Reduction Easement. It stated the other information required by Rule 4:73-1 had been provided to Minke. The Township's declaration of taking attached the same maps and descriptions of metes and bounds for the easements.

Thus, the Township's complaint provided Minke with "the map and a description of land to be acquired," R. 4:73-1, and the declaration of taking provided "a statement of the estate or interest therein being condemned," N.J.S.A. 20:3-17(e). "[T]he land to be condemned" was "described with such certainty as to leave no room for doubt or misapprehension as to the land actually to be taken." Hous. Auth. of Atl. City v. Atl. City Exposition,

62 N.J. 322, 328 (1973). In any event, the trial court properly refused to dismiss the complaint, as Minke has not shown the complaint "le[ft] the condemnee justifiably uncertain about the boundaries and extent of the property to be acquired." Cty. of Monmouth v. Kohl, 242 N.J. Super. 210, 216 (App. Div. 1990).

Moreover, the complaint made clear the Township sought to acquire a "Perpetual Storm Damage Reduction Easement required for the shore protection features as well as a perpendicular Permanent Pedestrian Access Easement as required by the [ACOE/NJDEP] Project." As the complaint stated and Minke knew, the Storm Damage Reduction Easement allowed "the placement of suitable beach and dune fill material," and the Pedestrian Access Easement "provide[d] the public with access to the improved beaches."

Nonetheless, Minke argues the Township identified the location of the easement, but not the legal rights it was taking. Minke contends the titles of the easements do not specify who will construct and maintain them, who may use them, and what rights and liabilities are retained by the owner. However, the statute and Rule 4:73-1 "do not provide for unlimited disclosure." State v. Town of Morristown, 129 N.J. 279, 288 (1992).

Moreover, we do not have the Township's full disclosures before us. In its answer to the complaint, Minke stated: "As part

25                                                    A-2660-15T3

of its preliminary negotiations, [the Township] provided [Minke] with, (a) a form of 'Deed of Easement' containing numerous terms and conditions applicable to a voluntary easement sought by plaintiff, and, (b) with an appraisal report containing varying definitions of easements."

Recently, we held that the NJDEP properly may "condemn private property to take perpetual easements for shore protection purposes," and that "easements that allow for publicly funded beach protection projects can include public access and use." State v. N. Beach 1003, 451 N.J. Super. 214, 223 (App. Div. 2017). There, under the same Project, the State sought agreement by property owners to "voluntary easements," then sent them appraisals, and after they refused, initiated condemnation proceedings to obtain easements. Id. at 225-26. "[T]o define the scope of the public access and use contained in the easements," we looked at "[t]he easements themselves." Id. at 239.

> The easements themselves make clear that the property owners retain ownership of, and the right to use, the area covered by the easements. The easements also make clear that the State of New Jersey, the relevant municipality, and "their representatives, agents, contractors and assigns" can go on to the easement areas and construct and maintain systems to protect against storm damage and prevent erosion. . . . The easements also

allow for public use and access to the easement areas.

[Id. at 239-40.]

We also noted that "[t]he appraisal explained the methodology used and the offer letter identified the easement to be taken," and that those documents "were sufficient to allow for meaningful and intelligent negotiations." Id. at 244.

Thus, it would be appropriate to examine the deed(s) of easement, appraisal(s), and any other documents the Township provided to Minke to see if they gave the description of the easements Minke claims is lacking from the complaint.[2] However, Minke has failed to provide us with the deed(s) of easement, the appraisal(s), or other documents Minke received from the Township. Accordingly, we refuse to review Minke's claim that it was unaware of the legal rights of easement the Township sought.

An appellant must include in the appendix "such other parts of the record . . . as are essential to the proper consideration of the issues." R. 2:6-1(a)(1)(I). "We obviously cannot address documents not included in the record." State v. Robertson, 438

---

[2] Form deeds of easement in the record give detailed descriptions of what the State and Township may enter to do, what they will construct and maintain, and what rights are retained by the owner under the Storm Damage Reduction Easement.

27

N.J. Super. 47, 56 n.4 (App. Div. 2014). Nor are we "obliged to attempt review of an issue when the relevant portions of the record are not included." Cmty. Hosp. Grp. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005); see Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 54-55 (2004) (upholding our refusal to address an issue where the appellant failed to provide the relevant portion of the record).

In its answer, Minke did not claim the description of the easements in the deed(s) of easement and the appraisal(s) was inadequate. Instead, Minke complained that "[n]either of these descriptions, nor any other description of the specific rights, estate or interest in real estate [the Township] is attempting to acquire has been incorporated into the declaration of taking[.]"

However, the complaint stated that Minke had been provided with the information required by R. 4:73-1, specifically including the "map and description of the easements to be acquired," "a description of the appraisal valuation method," and the other factors affecting the value. The complaint also noted the Township "attempted to reach a voluntary agreement for the acquisition of the two (2) easements in the Property." If nothing else, those portions of the complaint reminded Minke of the deed(s) of easement and appraisal(s) that the Township had previously provided.

Even if the Township erred in not explicitly incorporating the deed of easement or appraisal into the complaint or declaration of taking, any error was harmless. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. Because Minke had previously received the deed(s) of easement and appraisal(s), any error was not clearly capable of producing an unjust result.

Minke argues the failure to incorporate those documents in the complaint "deprives the appraisers, condemnation commissioners, the [condemnation] judge and jury" of knowledge of what is being valued. However, those documents may still be supplied to the commissioners or condemnation trial judge if they have not yet considered the matter. If they have, any absence of such knowledge may be a potential issue for any appeal from the condemnation verdict, but that issue is not now before us.

Minke next argues the complaint failed to include all of the interests the Township "intends to acquire" from Minke. Minke notes that to allow the public to walk from Long Beach Boulevard to the beach using the Pedestrian Access Easement the Township is seeking on Minke's Lot 4 of Block 20.107, the Township must also acquire pedestrian access easements on Lots 1, 2, and 3. Minke

A-2660-15T3

asserts it has a twenty-five-foot-wide private easement over those lots which may be affected by the pedestrian access easement the Township intends to seek in those lots.

To support that argument, Minke cites <u>State by Comm'r of Transp. v. Orenstein</u>, 124 N.J. Super. 295 (App. Div. 1973). However, that case simply "held that when the property being condemned is subject to an easement for the benefit of an adjacent property, an adjacent landowner who is deprived of his easement is entitled to a separate award." <u>State by Comm'r of Transp. v. Dikert</u>, 319 N.J. Super. 310, 317 (App. Div. 1999); <u>see</u> <u>Orenstein</u>, 124 N.J. Super. at 301-02. Thus, Minke may be entitled to an award if the Township brings a condemnation action against Lots 1, 2, or 3, and names Minke as one of the "[o]ther persons appearing of record who have or may claim to have an interest in the Property." <u>See</u> N.J.S.A. 20:3-17(e).[3]

However, <u>Orenstein</u> does not hold that a public body bringing a condemnation action for an easement against one property must also seek to condemn in the same action any other interests of the same property owner in other properties. <u>See</u> 124 N.J. Super. at

---

[3] The Township named the owners of Lots 1, 2, and 3, Lisa Tomasi, Lydia Zinzi, and Jean Velten, as defendants in this complaint because of their interest in beach access through Minke's Lot 4.

301. Moreover, <u>Orenstein</u> "held that a landowner who claims that the condemning authority is in fact taking, in addition to the land described in the complaint, an irrevocable appurtenant easement of right of way over adjacent lands, must present that claim to the court before entry of the order appointing commissioners." <u>State by Comm'r of Transp. v. Stulman</u>, 136 N.J. Super. 148, 157 (App. Div. 1975); <u>see</u> <u>Orenstein</u>, 124 N.J. Super. at 298-99. Minke did not do so. In any event, Minke cannot now demand compensation for its alleged easement over Lots 1, 2, and 3 which the Township never sought to condemn in this action.

Finally, Minke notes the complaint cited Ordinance 13-42, which authorized acquisition of the Storm Damage Reduction Easement for the construction of dunes and beach improvements, but does not cite the public beach access ordinance, Ordinance 14-32, that Minke challenged in its action in lieu of prerogative writs. <u>Cf.</u> N.J.S.A. 20:3-17(b). However, Minke was well aware of the Ordinance, and under it the Township "is duly vested with and has duly exercised its authority to acquire the property being condemned" for the public beach access easement. <u>See</u> N.J.S.A. 20:3-8. Therefore, any error was harmless. <u>R.</u> 2:10-2.

Minke's remaining arguments lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

A-2660-15T3

Affirmed.  We stay our judgment for twenty-eight days to give Minke time to file a petition for certification and seek any other relief with our Supreme Court.  See <u>Twp. of Long Beach v. Tomasi</u>, 231 N.J. 105 (2017).

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2660-15T3